

DA 12-0622

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 220

DANA ROLAN,

       Plaintiff and Appellee,

  v.

NEW WEST HEALTH SERVICES,

       Defendant and Appellant.


APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDV 2010-91
                Honorable Kathy Seeley, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

           Leo S. Ward, Daniel J. Auerbach; Browning, Kalecyzc, Berry & Hoven;
           Helena, Montana

       For Appellee:

           Erik B. Thueson, Scott Peterson; Thueson Law Office; Helena, Montana


                       Submitted on Briefs:   May 28, 2013
                                  Decided:   August 6, 2013


Filed:

                       _____
                              Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     New West Health Services (New West) appeals an order of the First Judicial District Court, Lewis and Clark County, certifying a class complaint against New West.  The sole issue on appeal is whether the District Court abused its discretion by adopting the class definition proposed by Rolan and denying New West's motion to modify the class definition.

¶2     We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Dana Rolan was injured in a vehicular collision on November 16, 2007 and sustained serious injury, resulting in medical expenses totaling approximately $120,000.  Rolan carried health insurance through New West.  The tortfeasor who caused the accident carried liability insurance through Unitrin Services Group (Unitrin).  Unitrin accepted legal responsibility and paid approximately $100,000 of Rolan's medical bills.

¶4     The policy under which Rolan was insured stated that, in addition to the right of subrogation, New West had a right to be reimbursed for benefits it paid to an insured who also had recovered or settled with a third party.  The policy also contained an exclusion for injuries covered by a medical payments provision of another liability carrier:

5.30.10 LIABILITY INSURANCE POLICY MEDICAL PAYMENTS

Healthcare services to treat any injury are not covered services if you receive payments for that injury under a medical payments provision of a liability insurance policy, whether insured by an insurance company or self-insured. Examples of liability insurance policies to which this section applies include, but are not limited to, automobile, homeowner and business liability policies.

2

¶5 On January 26, 2010, Rolan filed a complaint against New West alleging individual and class claims for breach of contract, violation of made-whole rights, and unfair claims settlement practices under §§ 33-18-201, MCA, *et seq.*, authorizing punitive damages. Rolan alleged that New West failed to pay approximately $100,000 of her medical expenses because Unitrin, the third party liability carrier, had "paid the majority of the bills." Rolan sought to certify a class under M. R. Civ. P. 23(b)(2) for declaratory and injunctive relief arising from the claims for breach of contract and violation of made-whole rights. She sought certification under Rule 23(b)(3) for damages arising from New West's alleged unfair claims settlement practices. Although Rolan asserted that a class definition was unnecessary at that time, she proposed the following class parameters:

> (1) All class members were insured by New West for the period commencing eight years prior to filing of this suit through the date this Court will enter judgment on the merits.
>
> (2) All members incurred medical costs due to the negligence or wrongdoing of a third party tortfeasor or tortfeasors.
>
> (3) For all members, New West avoided paying benefits because the tortfeasor or tortfeasors paid medical costs as part of tort damages.
>
> (4) For all members, New West failed to perform a "made-whole" determination before avoiding payment of benefits.

¶6 New West filed an Answer on July 7, 2010, denying that it refused to pay Rolan's medical expenses and opposing class certification. New West argued that the class should not be certified because Plaintiffs did not meet the Rule 23(a) criteria and "failed to

3

appropriately define a class of persons." On November 17, 2011, the District Court held a hearing on the motion for class certification.

¶7 On April 25, 2012, the District Court granted Rolan's motion to certify the class complaint. The District Court determined that Rolan had met the Rule 23(a) certification requirements and, citing our decision in *Diaz v. Blue Cross & Blue Shield of Mont.* (*Diaz I*), 2011 MT 322, 363 Mont. 151, 267 P.3d 756, rejected New West's argument that the class was imprecisely defined. In *Diaz I*, considering whether a class should have been certified alleging similar claims, we concluded that "the prerequisites set forth in Rule 23(a) sufficiently define a class in this case, and any additional definition by this Court, at this time, is unnecessary." *Diaz I*, ¶ 30.[1]

¶8 On May 4, 2012, the District Court issued an order certifying the class under Rule 23(b)(2) for declaratory and injunctive relief. The Certification Order contained a class definition that substantially mirrored the definition proposed in Rolan's complaint:

> (1) They were insured by New West at any time from January 26, 2002 (eight years preceding the filing of this lawsuit) through the date that this Court will ultimately enter judgment on the merits.
>
> (2) They incurred medical costs due to the negligence or wrongdoing of a third-party tortfeasor or tortfeasors.
>
> (3) Some or all of the medical costs were not paid by New West, but were paid by the tortfeasors or insurance covering damages caused by the tortfeasors.

---

[1] We have clarified today in *Diaz v. State* (*Diaz II*), 2013 MT 219, ___ Mont. ___, ___ P.3d ___, that we did not in *Diaz I* address whether non-filing insureds should be included in the class definition. Instead, we addressed class definition in *Diaz I* "only to confirm that a precisely defined class existed and that the named plaintiffs were members of the proposed class." *Diaz II*, ¶ 33 (citing *Diaz I*, ¶¶ 28-30).

(4) New West failed to perform a "made-whole" determination before avoiding payment of benefits.

The court then clarified how that class definition was to be interpreted:

> The term "avoiding payment of benefits," is intended to include situations where New West did not make payment of benefits because a tortfeasor was paying medical costs. It also includes situations where New West received reimbursement from medical providers when a tortfeasor commenced paying medical costs. It includes traditional subrogation which was achieved without first making a made-whole determination. Finally, it includes what might be characterized as de facto subrogation as described by the Montana Supreme Court in *State Auditor v. Blue Cross Blue Shield of MT*, 2009 MT 318, ¶¶ 18-19.

¶9 In its order granting class certification, the District Court noted that New West employed a company called First Recovery Group to assist it in subrogating against third-party liability carriers through the following procedures:

> New West contracted with a Michigan company called First Recovery Group to identify which of New West's insured[s] might have been injured in an accident where a liability carrier was involved. If First Recovery identified a carrier, *it would direct the carrier to pay the medical bills, allowing New West to avoid payment*. If New West had already paid the bills, First Recovery would direct the liability carrier to reimburse New West.

(Emphasis added.) The plaintiffs alleged that those procedures would result in New West being either reimbursed by a provider who had been paid by a liability carrier or not paying an insured's medical bill if the liability carrier already paid it—in both cases allegedly without first determining that the insured had been made whole.

¶10 On July 12, 2012, New West moved, pursuant to Rule 23(c)(1)(C), to limit the class to those insureds who timely filed claims for benefits covered by New West. In support of the

motion, New West noted that, following remand in *Diaz I*, First Judicial District Court Judge Jeffrey Sherlock considered similar arguments regarding the appropriate class definition and decided to confine the class to those insureds who had timely filed claims for benefits covered under the State's health insurance plan. New West argued that, "[i]n the event this case proceeds with a substantially different class definition, there is a strong likelihood for divergent legal conclusions that may not be reconciled between this case and *Diaz*." New West thus sought to limit the class definition to those insureds who had met the claim filing deadline:

> (1) individuals insured by New West who timely submitted claims for covered benefits pursuant to the terms of their health insurance plan(s) for health care services that took place no earlier than eight years prior to the filing of the Complaint in this action, which is January 26, 2010;
>
> (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and
>
> (3) who have not been made whole for their damages (or for whom New West conducted no made whole analysis) because New West has programmatically failed to pay benefits for their covered medical costs.

¶11 Rolan objected to modification of the class definition on grounds that New West's "billing procedures and insurance practices" would prevent numerous insureds from filing their claims with New West. Rolan stated that an insured generally submits claims to the medical provider, who in turn decides whether to bill New West or another liability carrier. Rolan also referred to New West's employment of First Recovery Group "to get tortfeasors to pay rather than New West[.]" She suggested, therefore, that New West was "directly or

6

indirectly encouraging its preferred providers to bill the tortfeasor," such that New West would not receive the claim when a liability carrier was involved.

¶12 On September 17, 2012, the District Court denied New West's motion to modify the class definition. The court stated that it agreed with Rolan that "if New West's customer service instructs their insureds to send their bills to the tortfeasor's liability carrier, no claim for benefits would be made to New West, thus defeating or compromising the insureds' made-whole rights." New West appeals.

## STANDARD OF REVIEW

¶13 We review class certification orders for an abuse of discretion. *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. We consider "not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Chipman*, ¶ 17 (quoting *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625) (internal quotation marks omitted). A district court's class certification decision "should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Chipman*, ¶ 17 (citing *Diaz I*, ¶ 10 and *Sieglock v. Burlington N. & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495). A court abuses its discretion "if its certification order is premised on legal error." *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209 (quoting *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001) (internal quotation marks omitted)).

7

**DISCUSSION**

¶14 *Whether the District Court abused its discretion by adopting the class definition proposed by Rolan and denying New West's motion to modify the class definition.*

¶15 Our decision today in *Diaz II* addresses a substantially similar issue to that New West raises here, though in a slightly varied procedural posture. In *Diaz II*, the class plaintiffs sought review of Judge Sherlock's decision to limit the class to insureds who timely filed claims for covered benefits under the State's health insurance plan. This Court affirmed the District Court's narrower choice of class definition, based in part on the deferential standard of review we apply to interlocutory class action appeals. We reiterated that "an appellate court's review under the abuse of discretion standard is limited to whether the court 'acted arbitrarily without conscientious judgment or exceeded the bounds of reason,'" *Diaz II*, ¶ 21 (quoting *Chipman*, ¶ 17), and stated that "[w]e are particularly reluctant to interfere with discretionary orders in the early stages of litigation." *Diaz II*, ¶ 21 (citing *Hegwood v. Mont. Fourth Jud. Dist. Ct.*, 2003 MT 200, ¶ 16, 317 Mont. 30, 75 P.3d 308). We emphasized that a district court has broad authority in assessing the manageability of a class action and, under M. R. Civ. P. 23(c)(1)(C), maintains discretion to modify the class definition at any time until final judgment:

> Issues bearing on the overall manageability of a class action properly are considered throughout the class action proceedings and fall particularly within the purview of the district court. *Blanton v. Dept. of Pub. Health and Hum. Servs.*, 2011 MT 110, ¶ 38, 360 Mont. 396, 255 P.3d 1229 (citing *Sieglock*, ¶ 8). . . . As is well-established, district courts have "broad discretion in determining issues relating to trial administration." *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140. In exercising that discretion in

8

the class action context, a district court "may consider any factor that the parties offer or the court deems appropriate to consider." *Blanton*, ¶ 38.

Additionally, class action certification orders "are not frozen once made"; instead, the District Court maintains discretion to alter the class definition as the case proceeds. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, 1202 n. 9 (2013) ("Rule 23 empowers district courts to 'alter or amend' class-certification orders based on the circumstances developing as the case unfolds.") (citing Fed. R. Civ. P. 23(c)(1) and 23(c)(1)(C)); *see Howe v. Townsend*, 588 F.3d 24, 39 (1st Cir. 2009) ("Courts can amend certification orders to reflect major changes or minor adjustments to the class.") (citing Fed. R. Civ. P. 23(c)(1)(C)). Accordingly, Plaintiffs may seek to alter or amend the class definition as discovery progresses.

*Diaz II*, ¶¶ 27-28.

¶16 Importantly, the same principles apply here. We now consider defendant New West's contention that the District Court's choice of class definition constituted an abuse of discretion on grounds that the current definition (1) is imprecise, (2) improperly diverges from the definition adopted by Judge Sherlock following remand in *Diaz I*, and (3) will necessitate de-certification of the class.

¶17 *1. Whether the class definition is imprecise.*

¶18 New West argues that "[i]dentifying class members who never submitted claims requires proof of legal and factual issues that are not readily determinable." According to New West, the class parameters are not sufficiently precise because the District Court did not define the term "avoiding payment of benefits." New West suggests that it cannot be held accountable for avoiding payment to an insured who did not file a claim. Citing *Polich v. Burlington N., Inc.*, 116 F.R.D. 258, 261 (D. Mont. 1987), New West thus argues that the class cannot be defined "using objective criteria." Additionally, if the broad class definition

9

is used, New West argues that Rolan would be an inadequate representative of the class claims because her experience varies factually from that of other class members. New West contends that in Rolan's case, New West was alleged to have "improperly accepted reimbursements from providers who were double paid for Rolan's medical expenses," but the District Court broadened the class to include any circumstances where "New West failed to perform a 'made-whole' determination before avoiding payment of benefits." New West again denies that it avoided paying Rolan's claims and contends that it did not fail to perform a made-whole analysis because "it never asserted a claim for subrogation."

¶19     As Rolan suggests, our decision in *Diaz I* disposes of these arguments. There, named plaintiffs Diaz and Hoffman-Bernhardt were insured under the State group insurance plan and suffered injuries in vehicular collisions caused by insured tortfeasors. They filed a class complaint alleging that the State and the third-party administrators of the State's group health insurance plan—Blue Cross and Blue Shield of Montana (BCBS) and New West— exercised their subrogation rights without conducting made-whole analyses of the insureds. As in Rolan's case, the State through its third-party administrator, BCBS, allegedly refused to pay Diaz for medical expenses already paid to her medical provider by the tortfeasor's insurer. Under a factual scenario that varies only slightly from Rolan's, New West allegedly refused to pay Hoffman-Bernhardt the reimbursement it already had received from her medical providers following payment by the tortfeasor's insurer to the medical providers. *See Diaz II*, ¶¶ 4-6. Employing a class definition essentially identical in scope to the one at issue here, the District Court initially determined that Plaintiffs failed to meet the Rule 23

10

criteria. *Diaz I*, ¶¶ 6, 28. The plaintiffs appealed and we reversed the order denying class certification, though we affirmed the court's decision that the third-party administrators were not liable under the made-whole laws. *Diaz I*, ¶ 26. As in this case, the defendants, relying on *Polich*, argued on appeal that the class had been imprecisely defined.[2] *Diaz I*, ¶ 29. This Court rejected that argument, stating:

> First . . . it is clear the members of the class will be individuals insured under the State plan, just like Diaz and Hoffmann-Bernhardt. Second, the prerequisites set forth in Rule 23(a) sufficiently define a class in this case, and any additional definition by this Court, at this time, is unnecessary.

*Diaz I*, ¶ 30. Because the class was sufficiently precise for purposes of certification, we remanded the case for further proceedings and did not consider any other arguments regarding suitability of the class parameters. *See Diaz II*, ¶ 33.

¶20 Rolan also cites *Blue Cross & Blue Shield of Mont., Inc. v. Mont. State Auditor*, 2009 MT 318, 352 Mont. 423, 218 P.3d 475, in arguing that the class definition is sufficiently precise. There, we affirmed a decision of the Montana State Auditor and Commissioner of Insurance to disapprove the coverage exclusions contained in BCBS's insurance forms. *State Auditor*, ¶ 1. We recognized that the exclusions "violate Montana statutory and case law on subrogation" because:

---

[2] The class in *Diaz I* was defined in full as follows:
> (1) insureds under health insurance plans and policies administered or operated by the State and the TPAs; (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and (3) who have not been made whole for their damages because the State and the TPAs have programmatically failed to pay benefits for their medical costs.

*Diaz I*, ¶ 28.

The exclusions allow BCBS to avoid any payment of benefits to its insured if the insured is "entitled to receive" benefits from any other auto or premises liability policy, whether or not the insured actually receives any of those benefits, and whether or not the insured has been made whole.

*State Auditor*, ¶ 19. While that case was not a class action and thus did not discuss class definition, we agree with Rolan that the language supports the District Court's inclusion in the class of members for whom New West "avoid[ed] payment of benefits" without first conducting made-whole analyses of its insureds. The District Court adequately explained the parameters for determining whether New West was "avoiding payment" to keep the class definition from becoming amorphous.

¶21 In summary, New West's policy exclusion is comparable to those discussed in *State Auditor* and *Diaz I*, both of which, like this case, involved allegations that the insurer is withholding payment to the insured—of either the reimbursement or the covered benefits. Additionally, Rolan's experience is comparable to that of the named plaintiffs in *Diaz I*, where we concluded that a similarly broad class definition was adequately precise to certify the class. That conclusion also applies in this case.

¶22 *2. Whether the class definition improperly diverges from the definition adopted by Judge Sherlock following our remand in* Diaz I.

¶23 Following our remand in *Diaz I*, the State requested the district court in that case to modify the class definition under Rule 23(c)(1)(C) to, among other things, include the one-year filing limitation applicable for receipt of benefits under the terms of the State's group insurance plan. As already noted, Judge Sherlock's certification order narrowed the class definition by including the filing limitation and we have affirmed that decision today in *Diaz*

12

*II*. Judge Sherlock's choice of class definition appeared to be based on the State's argument that, of the approximately 32,000 individuals insured under the State's plan, a large number failed to file their claims with the State and there appeared to be no manageable means by which the non-filing insureds could be identified. Even if they could be identified, the State argued that their eligibility for class membership would require innumerable mini-trials to determine which of those non-filing insureds failed to file as a direct result of the policy exclusion, rather than for other reasons. *See Diaz II*, ¶ 26.

¶24 We reemphasize that, under the abuse of discretion standard of review, district courts may reach different determinations of substantially similar questions, as long as neither court has "acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Chipman*, ¶ 17. We do not consider whether we would have reached the same decision. *Chipman*, ¶ 17. While we affirmed Judge Sherlock's choice of the narrower class definition in *Diaz II*, our decision in *Diaz I* made clear that the class also could have been certified under the broader definition. We stated that "certification orders are not frozen once made." *Diaz II*, ¶ 28. Instead, under Rule 23(c)(1)(C), the District Court maintains discretion to alter or amend the class definition at any time until final judgment. The same is true here. New West may seek to modify the class definition as discovery progresses.

¶25 The District Court in this case considered a different record from that presented to the court in *Diaz II*, and the two courts defined the classes in response to the particular arguments supporting the parties' proposed class definitions in each case. We disagree with New West's contention that the record fails to support divergence from Judge Sherlock's

13

choice of class definition. The State argued on remand following *Diaz I* that identification of the non-filing insureds eligible for class membership was highly burdensome, perhaps impossible, because there was no record of which insureds had failed to file due to the involvement of another liability carrier. *Diaz II*, ¶ 25. Here, Rolan offered evidence that New West hired First Recovery Group specifically for the purpose of identifying insureds whose injuries were covered by other liability carriers, and to assist New West in exercising its subrogation right against the other insurers—allegedly without first conducting made-whole analyses.

¶26 New West's appellate argument focuses on whether the class definition is sufficiently precise—a question we addressed in *Diaz I*—and has not persuaded us at this stage in the proceeding that identification of class members will be overly burdensome or impossible in this case. The District Court acted within its discretion in determining that the broader class definition should be used in light of Rolan's evidence supporting her claim that New West used practices and procedures "to get tortfeasors to pay rather than New West." *See Diaz I*, ¶ 47; *State Auditor*, ¶ 19.

¶27 *3. Whether the class definition necessitates de-certification of the class.*

¶28 The foregoing analysis makes clear that the District Court's class definition does not require de-certification of the class as the case now stands. New West argues that a class that includes both filing and non-filing insureds "cannot meet the remaining requirements of Rule 23(a) and (b) because it is not properly defined." In particular, New West asserts that, as the class is defined, its members do not share a common question of law or fact under Rule

14

23(a)(2), but it has not appealed the District Court's determination of the Rule 23(a) and (b) prerequisites. We already decided in *Diaz I* that a class of similar parameters met the Rule 23(a) and (b)(2) certification criteria. As discussed, the District Court maintains discretion to alter or amend the class definition at any time until final judgment. M. R. Civ. P. 23(c)(1)(C).

¶29 For the foregoing reasons, we affirm the District Court's certification order.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON
/S/ JIM RICE