DA 12-0432

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 219

JEANETTE DIAZ and LEAH HOFFMANN-BERNHARDT,
Individually and on Behalf of Others Similarly
Situated,

      Plaintiffs/Appellants,

   v.

STATE OF MONTANA,

      Defendant/Appellee.


APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2008-956
Honorable Jeffrey M. Sherlock, Presiding Judge


COUNSEL OF RECORD:

      For Appellants:

            James G. Hunt; Jonathan McDonald; Dix, Hunt & McDonald, Helena, MT
Erik B. Thueson; Scott Peterson; Thueson Law Office; Helena, MT

      For Appellee:

            Robert C. Lukes; Elena J. Zlatnik; Garlington, Lohn & Robinson, PLLP;
Missoula, MT


                     Submitted on Briefs:  May 28, 2013
                          Decided:   August 6, 2013


Filed:

                        _____
                                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Class representatives Jeanette Diaz and Leah Hoffmann-Bernhardt appeal a class certification order entered by the First Judicial District Court, Lewis and Clark County, arguing that the court imposed arbitrary and unreasonable limits when defining the class. The class complaint alleged that the State, as well as third-party administrators of the State group health insurance plan, violated the insureds' statutory made-whole rights by exercising their subrogation interests without first conducting made-whole analyses of the insureds. The sole issue on appeal is whether the District Court abused its discretion by defining the class to include only those insureds who had timely filed claims for covered benefits, thus excluding from the class all "non-filing" insureds.

¶2    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    This appeal from the District Court's certification order follows our remand in *Diaz v. Blue Cross & Blue Shield of Mont., Inc.* (*Diaz I*), 2011 MT 322, 363 Mont. 151, 267 P.3d 756. We summarize the relevant facts as established through the prior proceedings.

¶4    Defendants Blue Cross and Blue Shield of Montana (BCBS) and New West Health Services (New West) administered Montana's self-funded employee healthcare benefit plan. The State group insurance plan was created by statute in order to: "provide state employees with adequate group hospitalization, health, medical, disability, life, and other related group benefits in an efficient manner and at an affordable cost." Section 2-18-808, MCA; *Diaz I*, ¶ 3.

2

¶5 Diaz and Hoffman-Bernhardt were insured through the State group insurance plan. In separate incidents, Diaz and Hoffman-Bernhardt sustained injuries through automobile collisions caused by insured tortfeasors, whose insurers accepted liability. The third-party insurers paid Diaz's and Hoffman-Bernhardt's medical providers. *Diaz I*, ¶¶ 4-5.

¶6 On both occasions, the State and third-party administrators of the State insurance plan—BCBS and New West—allegedly exercised their rights of subrogation without first confirming that the insured under the State plan had been made whole.[1] The plaintiffs stated that BCBS refused to pay Diaz for medical expenses that already had been paid to her medical provider by the tortfeasor's insurer, and that New West refused to pay Hoffman-Bernhardt the reimbursement it had received from her medical providers following payment by the tortfeasor's insurer to the medical providers. *Diaz I*, ¶¶ 4-5.

¶7 On October 23, 2008, Diaz and Hoffmann-Bernhardt filed a class complaint alleging that the State, BCBS and New West violated the insureds' statutory made-whole rights by failing to conduct made-whole analyses of the insureds before exercising their subrogation interests. The prospective class included individuals whose benefits had been reduced under the State plan, as well as individuals whose benefits had been reduced under policies independently issued and administered by BCBS and New West. They sought a declaratory ruling that the defendants' practices violate Montana's made-whole laws, an injunction requiring defendants to calculate and pay amounts wrongfully withheld plus interest, and an

_____

[1] The parties refer to participants in the State group health insurance plan, and their dependents, as "plan members" or "insureds." For convenience, we refer to them as "insureds."

3

order enjoining the defendants from continuing to violate the made-whole rights of the insureds. *Diaz I*, ¶ 6.

¶8 On December 16, 2009, the District Court denied class certification on grounds that the determination whether class members had been made whole by a settlement with a tortfeasor's insurer would require individualized assessment. The court concluded that the class failed to meet the requirements of Rule 23.

¶9 Pursuant to M. R. App. P. 6(3)(d), the class representatives appealed to this Court, challenging the District Court's denial of certification. On October 13, 2010, we issued an order recognizing that the class representatives had raised "a threshold question" as to whether the made-whole doctrine applies to third-party administrators of self-funded employee benefit plans and other benefit plans. We remanded the case to the District Court "to determine whether the 'made-whole' laws codified in §§ 2-18-902 and 33-30-1102, MCA, apply to the various types of third-party administrators at issue in this litigation." Or. at 3 (Oct. 13, 2010) (DA 09-0682). On remand, the District Court determined that the made whole laws did not apply to third-party administrators, including BCBS and New West. The case returned to this Court for further review.

¶10 In *Diaz I*, we agreed with the District Court's conclusion that the made whole laws did not apply to the third party administrators, *Diaz I*, ¶ 24, but reversed its decision denying class certification under Rule 23(b)(2), *Diaz I*, ¶¶ 48-50. We noted that the class representatives had described the prospective class as:

4

(1) insureds under health insurance plans and policies administered or operated by the State and the TPAs; (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and (3) who have not been made whole for their damages because the State and the TPAs have programmatically failed to pay benefits for their medical costs.

*Diaz I*, ¶ 28. We also noted that the State and third-party administrators had argued that "Diaz and Hoffmann-Bernhardt's class definition is amorphous and has evolved throughout this litigation and, therefore should be rejected." At that time, we observed it was "clear the members of the class will be individuals insured under the State plan, just like Diaz and Hoffman-Bernhardt," and that the proposed class was sufficiently defined pursuant to the 23(a) criteria that "any additional definition by the Court, at this time, is unnecessary." *Diaz I*, ¶¶ 29-30. We then concluded that the Rule 23(a) and (b)(2) criteria had been met and remanded the case with instructions to certify the class.

¶11 On remand, BCBS and New West filed motions to dismiss them as defendants, based on our decision in *Diaz I*, which the court granted. Plaintiffs filed a Motion for Class Certification Against the State of Montana, requesting certification of the following class:

(1) Employees, Employee Dependents, Retirees and Retiree Dependents who participate or participated in the State of Montana's health insurance or health benefit plan(s), administered or operated by the State and/or the TPAs;

(2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and

(3) who have not been made whole for their damages (or for whom the State and TPAs conducted no made whole analysis) because the State and the TPAs have programmatically failed to pay benefits for their covered medical costs.

5

¶12 On March 7, 2012, the State filed a Response Brief seeking to further define the class, as permitted by Rule 23(c)(1)(C), "so that any necessary modification to the class definition can take place before any notice is sent to the class members." The State proposed several changes to the class definition, including two time limitations. First, the State argued that, under § 27-2-211, MCA, a two-year statute of limitations applies to claims for violations of the statutory made-whole laws and that the class therefore should be limited to those insureds who filed claims for benefits within two years of the filing of the complaint—specifically, those who filed after October 23, 2007. Second, pertinent to this appeal, the State argued that "the class should exclude any individuals who did not file their claims in a timely manner, as required by the State's Plan." The State plan includes a claims filing deadline for receipt of benefits—"one year from the date expenses were first incurred"—and thus compensates plan members only for claims timely submitted. The State's final proposed class definition included both the two-year statute of limitations and the one-year filing deadline:

> (1) members covered under health benefit plans and policies administered or operated by the State and the TPAs *who timely submitted claims for covered benefits pursuant to the terms of the Plan*, for health care services that *took place no earlier than October 23, 2007*;
>
> (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and
>
> (3) who have not been made whole for their damages because the State and the TPAs failed to pay benefits for their medical costs because of the application of the Coordination of Benefits Provision and who have not previously released such claims against the State.

6

(Emphasis added.)

¶13 The Plaintiffs argued that the court should consider modification of the class definition only "after Plaintiffs have had the opportunity to conduct discovery." They contended that this Court had in *Diaz I* rejected the State's request to develop the class definition and argued that the court should not narrow the definition to incorporate the State's affirmative defenses. The Plaintiffs disagreed with both of the time limitations proposed by the State. They contended that the State's liability arose not from statute but from the State's insurance contract and thus, the eight-year statute of limitations governing contracts under § 27-2-202, MCA, should apply. Additionally, they argued that many of the non-filing insureds failed to file their claims with the State due to the exclusion in the State plan, which makes clear that the plan will not cover claims eligible for payment by other liability carriers.

¶14 The District Court heard arguments from both parties supporting their proposed class definitions during a May 15, 2012 hearing. On June 19, 2012, the court issued a class certification order adopting the eight-year statute of limitations suggested by the Plaintiffs, but also adopting the one-year filing limitation proposed by the State:

> (1) employees, employee dependents, retirees and retiree dependents who participate or participated in the State of Montana's health benefit plan(s), administered or operated by the State and/or the TPAs *who timely submitted claims for covered benefits pursuant to the terms of the plan(s) for health care services that took place no earlier than eight years prior to the filing of the complaint in this action, which was October 23, 2008*;
>
> (2) who were injured through the legal fault of persons who have legal obligations to compensate them for all damages sustained; and

7

(3) who have not been made whole for their damages (or for whom the State and TPAs conducted no made whole analysis) because the State and the TPAs have programmatically [sic] failed to pay benefits for their covered medical costs.

(Emphasis added.) Plaintiffs appealed to this Court pursuant to M. R. Civ. P. 23(f). The State does not challenge the District Court's inclusion of the eight-year look-back period.

## STANDARD OF REVIEW

¶15 We review class certification orders for an abuse of discretion. *Chipman v. N.W. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. We consider "not whether this Court would have reached the same decision, but whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Chipman*, ¶ 17 (quoting *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625) (internal quotation marks omitted). A district court's class certification decision "should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Chipman*, ¶ 17 (citing *Diaz I*, ¶ 10, and *Sieglock v. Burlington N. & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495). A court abuses its discretion "if its certification order is premised on legal error." *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209 (quoting *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001) (internal quotation marks omitted)).

## DISCUSSION

8

¶16 *Whether the District Court abused its discretion by defining the class to include only those insureds who had timely filed claims for covered benefits, thus excluding from the class all "non-filing" insureds.*

¶17 As a preliminary matter, the State argues that Diaz and Hoffman-Bernhardt lack standing to challenge the class definition. They point out that "the Plaintiffs did not first present the issue to the District Court in a request for an amendment to the class definition" under M. R. Civ. P. 23(c)(1)(C), and argue that the appeal thus is not ripe for review. We disagree.

¶18 Both the Montana Rules of Civil Procedure and Montana Rules of Appellate Procedure provide this Court with broad authority to conduct interlocutory review of class certification decisions. M. R. Civ. P. 23(f) states that "[a]ppeal may be filed from an order granting or denying class action certification under this rule . . .." M. R. App. P. 6(3)(d) provides that "an aggrieved party" may appeal from "an order permitting or refusing to permit an action to be maintained as a class action[.]" Additionally, a class certification order "must define the class and the class claims, issues, or defenses . . .." M. R. Civ. P. 23(c)(1)(B). The District Court's choice of class definition thus forms a mandatory component of the appealable class certification order.

¶19 While the class representatives could under Rule 23(c)(1)(C) move to alter or amend the class certification order prior to final judgment, that does not preclude plaintiffs from seeking interlocutory review. Here, the District Court considered both parties' arguments regarding whether the class definition should be altered. The court's certification order reflected its decision to reject Plaintiffs' proposed class and instead adopt the limitations

proposed by the State. The court's decision to adopt the filing limitation adversely affected the class Plaintiffs: it served to eliminate a portion of the putative class. Plaintiffs thus demonstrate a "direct, immediate and substantial interest in the subject which would be prejudiced by the judgment or benefited by its reversal." *Branstetter v. Beaumont Supper Club, Inc.*, 224 Mont. 20, 25, 727 P.2d 933, 936 (1986) (citation omitted). Since a class certification order is appealable under our rules, we conclude that Plaintiffs' appeal may go forward.

¶20 Our review, nonetheless, is limited; we apply deference to a district court's preliminary determinations and refrain from micromanaging its administration of a class action. As stated, an appellate court's review under the abuse of discretion standard is limited to whether the trial court "acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Chipman*, ¶ 17. We are particularly reluctant to interfere with discretionary orders in the early stages of litigation. *See e.g. Hegwood v. Mont. Fourth Jud. Dist. Ct.*, 2003 MT 200, ¶ 16, 317 Mont. 30, 75 P.3d 308. Rule 23(c)(1)(C) preserves a trial court's flexibility to modify its certification orders, which are made at an early stage in the case, when the facts are disputed and discovery incomplete.

¶21 Applying appropriate deference, we now consider Plaintiffs' arguments that incorporation of the filing limitation constituted an abuse of discretion on grounds that: (1) the limitation defeated the purpose of the class action; (2) the limitation was inequitable; (3) the limitation violated the "law of the case" established in *Diaz I*; and (4) by imposing the limitation, the District Court improperly ruled on the State's defenses.

10

¶22   *1.  Is the limitation the District Court placed on class membership arbitrary and unreasonable given the purpose of the class action and the legal background?*

¶23   The class representatives argue that the limitation on class membership defeats the purpose of the class complaint—"to enjoin the State's systematic procedures which are violating the made-whole laws." They argue that the non-filing plan members failed to file claims specifically because of the procedures being challenged—namely, the policy's exclusion of coverage for expenses that an insured is entitled to have covered by other liability insurance carriers. Plaintiffs have attached a portion of the State's Employee Benefits Summary Plan Document, which contains the full language of that exclusion:

> The following services and expenses are not covered:
>
> .   .   .
>
> 5.  Expenses that a member is entitled to have covered, or that are paid under an automobile insurance policy, a premise liability insurance policy, or other liability insurance policy.  This includes, but is not limited to, a homeowner's policy or business liability policy, or expenses that a member would be entitled to have covered under such policies if not covered by the State Plan.

To file a claim, the plan directs the insureds to present an identification card to the healthcare provider, which triggers the following process:

> Most providers will submit a claim to your State Plan's claims administration company for you. . . .  If your provider will not submit a claim to the State Plan's claims administration company, complete a standard claim form, which should be available from the provider.  Have the provider complete his/her portion, and send the complete form, and all itemized bills to the State Plan's claims administration company at the address on your identification card. . . . Payment will automatically be sent directly to participating providers who have agreed to accept allowable fees.  You will receive payment directly for services of non-participating providers unless they are preferred providers with

11

special payment arrangements. . . . Respond to requests for information on accidents, other insurance coverage or any other information requests from the State Plan's claims administration company. Your claim will not be paid until required information is received.

Plaintiffs thus argue that on most occasions, "it is the providers – not the insureds – who actually file the claims." According to Plaintiffs, the providers generally are aware of the exclusion and, when it applies, seek coverage from other liability carriers rather than filing the insureds' claims for benefits under the State plan. Plaintiffs insist that a large number of non-filing insureds exist—indeed, the "majority" of the original putative class—who failed to file claims for benefits covered by the State plan as a direct result of the exclusion. Those individuals, according to Plaintiffs, are now caught in a "Catch-22": they have been omitted from the class suit challenging the legality of the exclusion specifically because they, or their claims administrators, complied with the terms of the exclusion.

¶24    The State argued that redefinition was necessary because the original prospective class could not accurately and efficiently be identified. It urged the District Court to:

> define the class in a manner that is workable and does not place an unnecessary burden on Defendants, nor inappropriately include individuals who will only later have to be removed.
>
> .   .   .
>
> [T]he proposed definition would include individuals for whom a made-whole analysis was not done and members were not made whole, *but without regard to the reason why the Plan did not make the payment. There are various contractual and benefit coverage grounds for denying the claim. For example, a claim may be denied if the claim for medical treatment was submitted late, the medical claim was not paid because the treatment was experimental or, the treatment involved was not otherwise covered.* These obvious defects in the class definition must be cured if we are to have a workable class for this case.

The danger exists that if the class is poorly defined, it could include members who have no actual claim against the State.

(Emphasis added.) The State further suggested during the May 15, 2012 hearing that the impracticability of identifying class members would be exacerbated by the large size of the putative class:

[O]ne of the things that presumably is going to follow is send out notices to the class. Well, how do we go about defining who that class is? We have situations, Your Honor, where people that are technically included in the class as defined by the plaintiffs that we would be unaware of because bills had never been submitted to the State of Montana. If they go to a third-party payer, we may not even know that there was a situation like this. . . . [T]he State of Montana has I think currently approximately 32,000 employees. All of these employees are covered under this employee benefit plan. We're not dealing with a small group of people here. So any time you talk about sending out notices to people, or doing searches for people, it's significant expense involved, significant time and labor.

In summary, the State argued that the management of a class totaling 32,000 individuals "where some group of the claimants had never filed a claim in the first place" would be burdensome and impracticable, "bordering on the impossible." The State reemphasizes on appeal, that, if non-filing insureds were to be included, "[e]ach such claim would be subject to unique defenses based on the circumstances surrounding their failure to submit a timely claim," necessitating numerous "mini-trials." The fact that no current class representative is a non-filer also bears relevance to the Rule 23(a) elements.

¶25 Additionally, the State presented testimony at the August 2009 motion hearings indicating that the State, through its third-party administrators, encouraged insureds to file all of their claims with their health plan administrator:

13

If they do mark auto related, they indicate there are $5,000 worth of automobile medical coverage, and then it's State Farm insurance, we would then send them – we would load our computer system to say that there is State Farm, there is 5,000. We would send a letter to the member and tell them the State of Montana contract has an exclusion for automobile medical payable claims. We will process your claims. Please submit your claims to get deductible and co-pay credit. Upon use of your medical pay, when it's exhausted, we would like a list of those claims so that we can determine that we've properly processed the claims and continue to process your claims under contract benefits. It has name and address and contact information so that they can know who to find.

¶26 Although the District Court's certification order did not include reasons for its choice of class definition, that choice was informed by the parties' arguments, presented in their briefs and during the hearing. While Plaintiffs raise potentially legitimate concerns, they did not propose a procedure acceptable to the District Court for identifying the non-filing insureds eligible for class membership. The court's decision ultimately to adopt the filing limitation indicates that it found the State's arguments persuasive. Absent a showing that potential class members who never filed claims because of the policy exclusion constituted a significant portion of the putative class and could be identified through a manageable process that was not overly burdensome, the District Court's decision to limit the class to insureds who timely filed claims for covered benefits was not arbitrary or unreasonable. Further, Plaintiffs are seeking declaratory and injunctive relief, which can be fashioned so as to achieve the desired result of enjoining any state procedures that are determined to violate the made-whole laws. This desired result would inure to the benefit of all insureds covered under the State plan, whether or not they have filed or are permitted in the future to file a

14

claim. Thus, the limitation on class membership does not frustrate this intended purpose of the class complaint.

¶27 Issues bearing on the overall manageability of a class action properly are considered throughout the class action proceedings and fall particularly within the purview of the district court. *Blanton v. Dept. of Pub. Health and Hum. Servs.*, 2011 MT 110, ¶ 38, 360 Mont. 396, 255 P.3d 1229 (citing *Sieglock*, ¶ 8). For example, a district court may under M. R. Civ. P. 23(d) "prescribe measures to prevent undue repetition or complication in presenting evidence or argument," "impose conditions on the representative parties," require amendment of pleadings to "eliminate allegations about representation of absent persons," and "deal with similar procedural matters." M. R. Civ. P. 23(d)(1)(A)-(E); *see Sagers v. Yellow Freight Syst., Inc.*, 529 F.2d 721, 735 n. 27 (5th Cir. 1976) (noting that the district court may under Fed. R. Civ. P. 23(d) further refine the class definition as discovery proceeds); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) ("Rule 23(d) vests the district court, as manager of the class action, with the appropriate authority to enter whatever orders are necessary to the conduct of the action[.]"). As is well-established, district courts have "broad discretion in determining issues relating to trial administration." *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140. In exercising that discretion in the class action context, a district court "may consider any factor that the parties offer or the court deems appropriate to consider." *Blanton*, ¶ 38.

¶28 Additionally, class action certification orders "are not frozen once made"; instead, the District Court maintains discretion to alter the class definition as the case proceeds. *Amgen*

*Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, 133 S. Ct. 1184, 1202 n. 9 (2013) ("Rule 23 empowers district courts to 'alter or amend' class-certification orders based on the circumstances developing as the case unfolds.") (citing Fed. R. Civ. P. 23(c)(1) and 23(c)(1)(C)); *see Howe v. Townsend*, 588 F.3d 24, 39 (1st Cir. 2009) ("Courts can amend certification orders to reflect major changes or minor adjustments to the class.") (citing Fed. R. Civ. P. 23(c)(1)(C)). Accordingly, Plaintiffs may seek to alter or amend the class definition as discovery progresses.

¶29    2. *Is the limitation arbitrary and unreasonable because it is inequitable?*

¶30    For the same reasons, we disagree with Plaintiffs' argument that the District Court's class certification order should be reversed on equitable grounds. Plaintiffs suggest that "[t]he effect of the restricted definition allows the State to capitalize on unsubmitted claims to exclude members from the class even though it is the State's procedures which have caused the non-filings." Again, Plaintiffs offered little more than speculation for this premise and the District Court maintains discretion to alter the class size if Plaintiffs propose and convince the court of a manageable means by which the eligible non-filing claimants may be ascertained.

¶31    3. *Is the limitation contrary to the "law of the case" established in Diaz I?*

¶32    Plaintiffs next assert that the District Court's choice of class definition violates the law of the case established by our decision in *Diaz I*. The law of the case doctrine operates similarly to the principle of *res judicata*, and "expresses the practice of courts generally to refuse to reopen what has been decided." *State v. Wagner*, 2013 MT 47, ¶ 18, 369 Mont.

16

139, 296 P.3d 1142 (citation and internal quotation marks omitted). We have articulated the doctrine as follows:

> When this Court, in deciding a case presented, states a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

*Winslow v. Mont. Rail Link, Inc.*, 2005 MT 217, ¶ 30, 328 Mont. 260, 121 P.3d 506.

¶33    The law of the case doctrine does not apply here because we did not decide in *Diaz I* whether non-filing insureds should be included in the class. We addressed class definition only to confirm that a precisely defined class existed and that the named plaintiffs were members of the proposed class. *Diaz I*, ¶¶ 28-30. Plaintiffs observe accurately that the more expansive class definition was in place when we concluded that the class had satisfied the Rule 23(a) and (b)(2) certification criteria, including the requirement of a common question of law or fact under Rule 23(a)(2). The inclusion of non-filing insureds in the class, however, was not necessary to our decision that the class should be certified. We concluded only that "the prerequisites set forth in Rule 23(a) sufficiently define a class in this case, and any additional definition by this Court, *at this time*, is unnecessary." *Diaz I*, ¶ 30 (emphasis added). Our direction to the District Court to certify the class on remand did not remove that court's discretion to alter or amend the class certification order—including the class definition—as the case proceeded. M. R. Civ. P. 23(c)(1)(C).

¶34    Plaintiffs also point out that the class definition in this case conflicts with the definition chosen by First Judicial District Court Judge Kathy Seeley in a similar case, which

17

included both filing and non-filing insureds. We have affirmed Judge Seeley's choice of class definition today in *Rolan v. New W. Health Servs.*, 2013 MT 220, ___ Mont. ___, ___ P.3d ___. We noted that differences exist in the records considered in the two cases, *see Rolan*, ¶ 25, and explained that "under the abuse of discretion standard of review, district courts may reach different determinations of substantially similar questions, as long as neither court has 'acted arbitrarily without conscientious judgment or exceeded the bounds of reason.'" *Rolan*, ¶ 24 (quoting *Chipman*, ¶ 17). For the reasons already explained, the District Court's decision in this case to limit the class definition to filing insureds was within its discretion.

¶35    *4. By imposing the limitation, did the District Court improperly rule on the State's defenses?*

¶36    The foregoing discussion disposes of Plaintiffs' final argument that, by incorporating the filing deadline, the District Court improperly ruled on the State's defenses. As discussed, we did not in *Diaz I* instruct the District Court as to whether non-filing insureds should be included in the class definition; thus, the court was free to alter or amend the class based on any factors it deemed appropriate. M. R. Civ. P. 23(c)(1)(C); *Blanton*, ¶ 38. Here, the State explained that identification of the non-filing insureds eligible for class membership would be overly burdensome, if not impossible, where the State has no record of individuals who failed to submit their bills to the State of Montana. Even if the group of non-filing insureds easily could be ascertained, the State argued that the court would need to conduct numerous mini-trials to evaluate whether each non-filing insured failed to file due to the exclusion,

18

rather than one of many other possible reasons. The District Court appropriately considered these practical difficulties when defining the class and its decision to limit the class to filing insureds was within its broad discretion. *Fink*, ¶ 18; *Blanton*, ¶ 38.

¶37 For the foregoing reasons, we affirm the District Court's certification order.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Michael E Wheat dissents.

¶38 I dissent from the majority opinion to the extent that it refused to modify the class definition to conform to the class definition we approved in the companion case of *Rolan v. New West Health Services*. The class definition in *Rolan* is broad enough to include those people who could have filed claims for benefits under their health insurance program but did not because their claims were being paid by a third party liability carrier. This group of claimants' potential for injury is just as compensable as those who filed claims with their health insurer. The district court in *Rolan* recognized this fact and defined a class to include such claimants. For this reason I would have modified the class definition in this case to conform to the class definition in *Rolan*.

19

/S/ MICHAEL E WHEAT