**FILED**

July 7 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0464

DA 14-0464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 194

JAMES MORROW, TYREL WERMELSKIRCHEN,
DUSTIN HIGGS, and others similarly situated,

      Plaintiffs and Appellants,

   v.

MONFRIC, INC., a California Corporation,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
               In and For the County of Flathead, Cause No. DV-09-1269B
               Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Lawrence A. Anderson, Attorney at Law, P.C., Great Falls, Montana

      For Appellee:

            Angela K. Jacobs, Marcel A. Quinn, Hammer, Jacobs & Quinn, PLLC,
            Kalispell, Montana

                          Submitted on Briefs: April 1, 2015
                                Decided: July 7, 2015

Filed:

_____
                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Plaintiffs James Morrow, Tyrel Wermelskirchen, and Dustin Higgs, on behalf of others similarly situated, appeal the denial of their motion for class certification in the Eleventh Judicial District Court, Flathead County.  We affirm.

¶2     The issue presented for review is whether the District Court abused its discretion when it denied class certification on the grounds that the proposed class was not sufficiently numerous.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Plaintiffs are laborers who worked on the construction and rehabilitation of two multi-family housing projects in Kalispell, known as Glacier Manor and Treasure State Plaza Apartments.  The owner of the projects is Glacier States Associates, which hired Monfric, Inc., as the general contractor.  Monfric hired subcontractors to perform all of the labor on the projects.  Plaintiffs are employees of those subcontractors.  The projects were financed with industrial development bonds issued by the City of Kalispell.  A contractor on such a project is required by Montana law to pay prevailing wages.  While the contract between Glacier States and Monfric included a provision requiring Monfric to pay prevailing wages, Plaintiffs claim that contracts between Monfric and its subcontractors did not include that requirement.  Plaintiffs claim they were not paid prevailing wages.

¶4     Plaintiffs filed this wage and hour action and moved for certification of a proposed class including all laborers, skilled tradesmen, and craftsmen who worked for Monfric or its subcontractors and who were not paid prevailing wages during the construction and

2

rehabilitation of Glacier Manor and Treasure State Plaza. Plaintiffs identified 28 persons they claim were underpaid on the projects, seven of whom were named plaintiffs and class representatives. Monfric objected to the inclusion of four class members, contending that they were not laborers. The class members not joined in the action thus numbered between 17 and 21.

¶5 A hearing was held on the motion for class certification on May 29, 2014. The District Court asked counsel for Plaintiffs why the remaining 17 to 21 individuals could not simply be joined as parties. Counsel responded, "I can try to do that. I didn't have their names . . . and I don't have all their addresses." The District Court observed that the proposed class was "a relatively small group of . . . local employees, although I suppose if this work happened . . . prior to 2008 anyway that they're probably all over in North Dakota now." Following the hearing, the District Court issued an order denying the motion for class certification, concluding that the class was not so numerous that joining its members as named parties would be impracticable. The District Court also observed that certification of a class would not result in a more efficient use of judicial resources. The District Court concluded that because Plaintiffs had failed to demonstrate numerosity of the proposed class, it did not need to consider other factors.

**STANDARD OF REVIEW**

¶6 We afford district courts the broadest discretion when reviewing a decision on class certification. *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452. The district court "'is in the best position to consider the most fair and efficient procedure for conducting any given litigation.'" *Jacobsen*, ¶ 25 (quoting

3

*Chipman v. Nw. Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193).

To the extent that a ruling on class certification is based on a finding of fact, we review that finding for clear error. *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 17, 368 Mont. 1, 291 P.3d 1209. When the ruling involves a question of law, our review is de novo. *Mattson*, ¶ 17.

**DISCUSSION**

¶7      *Whether the District Court abused its discretion when it denied class certification on the grounds that the proposed class was not sufficiently numerous.*

¶8      A class action allows representative parties to bring claims on behalf of others similarly situated, with the aim of conserving the resources of both the court and the parties by permitting common issues to be litigated at once. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 2369 (1982) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)). As such, a class action is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Mattson*, ¶ 18 (quoting *Califano*, 442 U.S. at 700-01, 99 S. Ct. at 2557). M. R. Civ. P. 23 governs the propriety of class actions in Montana and prescribes four prerequisites, each of which must be demonstrated before the class may be certified:

     (1) the class is so numerous that joinder of all members is impracticable;
     (2) there are questions of law or fact common to the class;
     (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
     (4) the representative parties will fairly and adequately protect the interests of the class.

These factors are often referred to as numerosity, commonality, typicality, and adequacy of representation. *Mattson*, ¶ 18 (citing *Diaz v. Blue Cross & Blue Shield of Mont.*,

4

2011 MT 322, ¶ 27, 363 Mont. 151, 267 P.3d 756). The party seeking class certification bears the burden of demonstrating each of these factors. *Diaz*, ¶ 27. The failure to satisfy any one of these prerequisites is fatal to class certification. *Diaz*, ¶ 27. Because M. R. Civ. P. 23 corresponds to Fed. R. Civ. P. 23, we may look to federal case law for guidance in interpretation. *Chipman*, ¶ 43.

¶9 There is no bright-line number of class members that will establish numerosity. Instead, the numerosity of the class and impracticability of joinder must be determined on a case by case basis, with consideration given to all of the surrounding circumstances. *Gen. Tel. Co. of the Nw. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S. Ct. 1698, 1706 (1980); *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011). The United States Supreme Court has observed, however, that "as few as 15 employees" would likely "be too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330, 100 S. Ct. at 1706; 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 3:5, 247 (4th ed. 2002). Generally, fewer than 21 potential class members is regarded as inadequate, while more than 40 is likely to be sufficient. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); 2 James Wm. Moore, Allan D. Vestal & Philip B. Kurland, *Moore's Manual: Federal Practice and Procedure* § 14A.22 (2014).

¶10 Where a class is small in number, other considerations become more significant in determining whether joinder is impracticable. Conte & Newberg, *supra*, §§ 3:3, at 225, 3:6, at 249-53. Considerations recognized by other courts have included "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute

5

individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d. Cir. 1993); Conte & Newberg, *supra*, § 3:6, at 250-52. While each of these factors may be relevant to the question of class certification as a whole, this Court has not yet recognized their applicability to the narrower issue of numerosity. The party seeking certification bears the burden of making a factual showing demonstrating both the approximate number of class members and the impracticability of joinder. *Diaz*, ¶ 27. Mere speculation or conclusory allegations are not sufficient. *Diaz*, ¶ 31 (quoting *Polich v. Burlington N., Inc.*, 116 F.R.D. 258, 261 (D. Mont. 1987)); Moore et al., *supra*, § 14A.22. Plaintiffs must actually prove that they have satisfied the prerequisites for class certification. *Sangwin v. State*, 2013 MT 373, ¶ 15, 373 Mont. 131, 315 P.3d 279. A court may not simply take their allegations as true nor presume their compliance with the requirements of M. R. Civ. P. 23(a). *Sangwin*, ¶ 15; *Mattson*, ¶ 15.

¶11 The proposed class in this case includes 24 to 28 persons, seven of whom are named plaintiffs and class representatives. This is near the number below which class certification is likely to be considered inappropriate. *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330, 100 S. Ct. at 1706; *Cox*, 784 F.2d at 1553; Conte & Newberg, *supra*, § 3:5, 247 ; Moore et al., *supra*, § 14A.22. The relatively small number of the proposed class is not dispositive, and indeed, courts may reasonably reach differing conclusions as to the propriety of certifying a class this size. In such circumstances, we defer to the District Court's broad discretion in determining whether a class action is "'the most fair and

efficient procedure for conducting'" the litigation. *Jacobsen*, ¶ 25 (quoting *Chipman*, ¶ 17). We cannot conclude that the District Court abused that discretion here.

¶12 When a class is relatively small, however, a court must also examine other factors and circumstances that may make joinder impracticable. *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330, 100 S. Ct. at 1706; *Odom*, 275 F.R.D. at 407. The additional factors to be considered are flexible, and the impracticability of joinder must be determined on a case by case basis, with consideration given to all of the surrounding circumstances. *Odom*, 275 F.R.D. at 407. In this case, Plaintiffs raise four such circumstances: the geographic dispersion of proposed class members; the limited financial resources of proposed class members; the impracticability of litigating their "relatively small" claims; and the interests of judicial economy.[1] The consideration of these factors remains within the broad discretion of the district court. *Jacobsen*, ¶ 25. The exercise of that discretion is nevertheless bound by the applicable law, and must avoid arbitrary or unreasonable results. *Diaz v. State*, 2013 MT 219, ¶ 15, 371 Mont. 214, 308 P.3d 38; *Peterson v. St.*

---

[1] The concurring opinion suggests that our discussion of these factors, and our observation that Plaintiffs presented no proof to support their arguments, constitutes unnecessary dicta. Obiter dictum "'is a remark made or opinion expressed by a judge, in his decision upon a cause, "by the way"—that is, incidentally or collaterally, and not directly upon the question before the court . . . .'" Black's Law Dictionary 1240 (Bryan A. Garner ed., 10th ed. 2014) (quoting William M. Lile et al., *Brief Making and the Use of Law Books* 304 (Roger W. Cooley & Charles Lesley Ames eds., 3d ed. 1914)). The arguments we address here were presented to the District Court, considered at the hearing on class certification, and are again raised in the parties' briefs on appeal. Therefore, they cannot reasonably be dismissed as incidental or collateral to the decision of the District Court, or indeed, resolution of the numerosity issue on appeal. It is well-established that numerosity involves consideration of more than the simple number of potential class members. *See* Conte & Newberg, *supra*, §§ 3:3, at 225, 3:6, at 249-53. Where the number of potential class members is "on the fence," other factors that would make joinder impracticable may be decisive. The discussion of those factors is necessary in a case such as this and reflects the flexible nature of the class-certification analysis.

7

*Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 45, 357 Mont. 293, 239 P.3d 904. Thus, our discussion is not resolved by reference to the standard of review alone, and we offer guidance on the district court's exercise of its discretion where appropriate. *See Maloney v. Home & Inv. Ctr., Inc.*, 2000 MT 34, ¶ 57, 298 Mont. 213, 994 P.2d 1124.

¶13 We first address the alleged geographic dispersion of the proposed class members. If the proposed class members are not found within the same jurisdiction, the impracticability of joinder is increased. *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 449 (E.D. Cal. 2013) (citing *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986)). Plaintiffs argue that there is no evidence the proposed class members still reside in the Kalispell area, and ask the Court to take judicial notice of the fact that many Montana laborers work in the oil fields of North Dakota. Plaintiffs have offered no evidence suggesting that the laborers who worked on the Monfric projects have left the Kalispell area. Indeed, at the hearing on Plaintiffs' motion for class certification, it was made clear that counsel had not attempted to locate the remaining proposed class members, and the idea that they may have left for North Dakota was based entirely on an off-the-cuff suggestion by the District Court. Plaintiffs have not produced facts in support of their argument that the geographical dispersion of the proposed class members makes their joinder in a single action impracticable. The District Court did not abuse its discretion when it concluded that joinder was not impracticable because the proposed class members were in the same geographic area.

¶14 Plaintiffs point to their allegedly limited financial means, the "relatively small" size of their claims, and the interests of judicial economy to demonstrate that individual

suits would be impracticable. The question we address with respect to numerosity of the class, however, is not whether individual suits would be impracticable, but whether joinder of the proposed class members in a single suit would be impracticable. M. R. Civ. P. 23(a)(1). Indeed, although this prerequisite is often conveniently referred to as "numerosity," it is more accurately termed "impracticability of joinder." *See* Conte & Newberg, *supra*, § 3:6, at 250. Plaintiffs rely on *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339, 100 S. Ct. 1166, 1174 (1980), and subsequent cases for the proposition that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." This observation was not specific to the element of numerosity, but described the benefits of class-action litigation as a whole. *Roper*, 445 U.S. at 339, 100 S. Ct. at 1174. We agree that without the availability of a class action, aggrieved persons *may* be without any effective redress; however, aggrieved persons who are able to join their claims in a single action are *not* without effective redress, despite their small claims or limited resources. The requirement of numerosity under M. R. Civ. P. 23(a)(1) does not require a party to demonstrate the benefits of a single action; instead, it simply asks whether, under the circumstances of the particular case, joinder is a practicable alternative means of obtaining those benefits. The arguments raised by Plaintiffs, demonstrating the impracticability of individual actions, are of little relevance in demonstrating the impracticability of joinder.

9

¶15 The arguments raised by Plaintiffs may be relevant to other aspects of the class-certification inquiry. For example, M. R. Civ. P. 23(b)(1) asks whether adjudication of individual claims would create a risk of inconsistent results or lead to outcomes that may substantially impair the ability of other proposed class members to protect their interests. M. R. Civ. P. 23(b)(3) asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." A court does not reach the matters raised by M. R. Civ. P. 23(b), however, until the prerequisites of 23(a) have been satisfied. *Diaz*, ¶ 27.

¶16 Because the District Court based its analysis of numerosity in part on these considerations, and because they have been recognized by other courts in the context of a numerosity analysis, *see Robidoux*, 987 F.2d at 936; Conte & Newberg, *supra*, § 3:6, at 250-52, we address them here. Plaintiffs first assert that the proposed class members are laborers of limited financial means, and therefore unable to prosecute their individual claims. The only evidence in the record pertaining to the financial means of the proposed class members are documents establishing the prevailing wages for laborers in 2008, as calculated by the Montana Department of Labor, and incomplete information regarding the wages paid by subcontractors on the Monfric projects. There is no evidence establishing the current income or financial resources of the proposed class members. Having raised the argument that limitations on their financial resources prevent them from litigating their claims outside of a class action, Plaintiffs have nonetheless failed to offer facts supporting their argument. The District Court did not abuse its broad discretion when it determined class certification was not appropriate.

10

¶17 Plaintiffs also claim that the "relatively small" size of their claims makes individual litigation impracticable. The small size of individual claims may weigh in favor of class certification. For example, in a lawsuit where claims averaged $100 per plaintiff, the United States Supreme Court concluded that "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 2973 (1985). Based on an analysis provided by Plaintiffs, their individual claims range from approximately $300 to $3,800. Though the value of many of the claims is yet to be determined, the average claim appears likely to be in the area of $1,500. It is not unusual in Montana courts for parties to seek amounts comparable to Plaintiffs' claims, particularly where, as here, they also request attorney's fees. *See, e.g.*, *McDunn v. Arnold*, 2013 MT 138, ¶¶ 7-9, 370 Mont. 270, 303 P.3d 1279 (affirming district court award of $1,444.66 in damages and $20,697 for attorney's fees and costs). There is no bright-line value of claims that will make class certification appropriate, just as there is no bright-line number of prospective class members that will do so. *See Gen. Tel. Co. of the Nw.*, 446 U.S. at 330, 100 S. Ct. at 1706. We allow district courts broad discretion in determining whether class certification is appropriate, *Jacobsen*, ¶ 25, and the District Court did not abuse its discretion here.

¶18 Plaintiffs also argue that class-action certification would promote judicial economy by resolving their claims in one action, rather than several. The District Court concluded that the eventual necessity of determining the type of labor performed by each individual, the number of hours worked by each individual, the prevailing wage for that type of labor, and the actual wage paid to that individual would outweigh the efficiency

benefits of a class action. We defer to the discretion of the District Court in determining "'the most fair and efficient procedure for conducting any given litigation.'" *Jacobsen*, ¶ 25 (quoting *Chipman*, ¶ 17). We also observe, once again, that while a class action may be more efficient than several individual actions, it is not more efficient than joinder of the parties where practicable. Here, it was not demonstrated that joinder was impracticable. Instead, it was established that counsel had made no efforts to join the remaining proposed class members in the action. Consequently, the District Court did not abuse its discretion when it determined that joinder was not impracticable and a class action was not the most efficient means of conducting the present litigation.

## CONCLUSION

¶19 The District Court did not abuse its discretion when it concluded that Plaintiffs had failed to establish, as required by M. R. Civ. P. 23(a)(1), that their proposed class was so numerous as to make joinder of its remaining members in a single action impracticable. Plaintiffs' failure to demonstrate this prerequisite was fatal to their motion for class certification.

¶20 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ JIM RICE

12

Justice Patricia O. Cotter, concurring.

¶21　　I concur in the outcome of the Court's Opinion. However, I do have a concern with the Court's extensive dissection of the evidence presented by the plaintiffs in support of numerosity. As the Court notes at ¶ 9, questions of numerosity and impracticability of joinder must be determined on a case-by-case basis. The Court nonetheless appears to set a standard for what constitutes a sufficient level of proof with respect to such factors as geographic dispersion and the financial resources of the individual plaintiffs. Because in future cases, these factors will vary widely in application, relevance and weight depending on the particular facts before the reviewing court, I believe the Court's pronouncements regarding the proof required with respect to such numerosity considerations to be unnecessary dicta.

¶22　　This being said, I concur in the Court's conclusion that the District Court did not abuse its discretion in denying the plaintiffs' motion for class certification. I reach this conclusion because, as the cases cited by the Court illustrate, the number of potential class members at issue here places this case on the numerosity "fence." Had the District Court concluded that numerosity was established, I would have affirmed that determination as being within the court's discretion, as it is in the best position to determine the most efficient procedure for resolving the plaintiffs' claims in the case before it. The converse must also be true. In light of the gray area in which a class of this size resides, I cannot conclude that the District Court abused its broad discretion when it concluded that numerosity was not met under the circumstances presented. I therefore concur in the decision of the Court.

/S/ PATRICIA COTTER


Chief Justice Mike McGrath and Justice James Jeremiah Shea join in the concurrence of Justice Patricia O. Cotter.


/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA

Justice Michael E Wheat, dissenting.

¶23   I respectfully dissent from the majority's holding.  I understand the importance of giving broad discretion to district courts in determining whether to certify a class. However, in this case I would remand with instructions to the District Court to grant the class certification, because, in close call cases like this one, the equitable balance ought to tip in favor of the injured party.

¶24   As noted by the majority, the number of potential class members in this case falls squarely in the gray area for satisfying the numerosity requirement for class certification. However, in the interest of justice, and given the impracticability of each plaintiff bringing an individual suit for a relatively small amount of damages, I would allow the plaintiffs to seek financial redress through the mechanism of the class action lawsuit.

¶25   Plaintiffs argue that, given the relatively small damages claimed by each individual, it would be impractical for each claimant to bring an individual suit. The majority explains in ¶ 10 that other courts have considered the impracticality of claimants

bringing individual suits when determining whether class certification is appropriate. The majority, however, refused to adopt the impracticality of individual suits as a consideration in class certification. Rather, the majority focuses solely on the impracticality of joinder under M. R. Civ. P. 23(a)(1). While I acknowledge that the question of whether joinder is impractical is a statutorily required consideration in determining the appropriateness of class certification, I would also require courts to consider the difficulty of individual plaintiffs pressing individual suits to recover small sums.

¶26 We have explained that one of the benefits of class certification is to promote fairness and judicial efficiency by consolidating like causes into a single action. *Mattson v. Mont. Power Co.*, 2012 MT 318, ¶ 42, 368 Mont. 1, 291 P.3d 1209. However, another important policy consideration is that class action suits provide an avenue for plaintiffs whose individual damages may be insufficient to justify bringing a solo claim to band together and act as private attorneys general in enforcing their legal rights. *Roper*, 445 U.S. at 338-339. Without the availability of a class action, many disadvantaged plaintiffs would be left without effective redress for their injuries. *Roper*, 445 U.S. at 339.

¶27 The majority essentially dismisses this second policy consideration, stating that, through joinder, the plaintiffs would have an effective redress. This pronouncement ignores the practical issues inherent in such a procedural process. Whereas a class-action lawsuit allows qualifying plaintiffs to simply sign on as a member of the class, joinder requires each plaintiff to file an individual suit. As a practical matter, it would be difficult for many individuals seeking relatively small damages to find counsel willing to

represent them for such small sums. On the other hand, the increased financial incentives available to counsel for a class action should make finding competent counsel significantly easier.

¶28   The majority focuses on whether joinder is impractical in an abstract sense, but does not consider the impracticability of joinder for the very people who would be joined, the plaintiffs. While I would not take the decision to certify a class out of the district court's discretion, I would urge district courts to apply a liberal interpretation of the requirements for class certification, keeping in mind the inherent difficulties associated with an individual seeking a small amount of damages from a large corporation, such as the difficulty in finding legal counsel or, if counsel is unavailable, navigating the legal process as a *pro se* litigant. Article II, section 16 of the Montana Constitution guarantees citizens a right of access to the courts without denial or delay, yet access to justice in Montana is at a critical low. *See*, Montana Supreme Court Access to Justice Commission, *The Justice Gap in Montana: As Vast as Big Sky Country* (Carmody and Associates, July 2014). Today's decision does nothing to alleviate that situation.

¶29   I respectfully dissent.

/S/ MICHAEL E WHEAT