FILED

November 17 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0632

DA 14-0632

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 324

KENT D. ROOSE,

Plaintiff and Appellee,

v.

LINCOLN COUNTY EMPLOYEE GROUP HEALTH
PLAN; EMPLOYEE BENEFIT MANAGEMENT
SERVICES, INC.; JOINT POWERS TRUST;
JOHN DOES 1-50; JOHN DOES 51-100,

Defendants and Appellants.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV-2009-878
Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Robert C. Lukes, Peter J. Arant, Justin K. Cole, Garlington, Lohn &
Robinson, PLLP; Missoula, Montana

For Appellee:

Erik B. Thueson, Erik Thueson Law Office; Helena, Montana

William R. Bieler, Burk, Lee & Bieler, PLLC; Choteau, Montana

For *Amicus Curiae* Montana Defense Trial Lawyers Association:

David C. Clukey, James M. Duncan, Crowley Fleck PLLP; Billings,
Montana

Submitted on Briefs:  June 17, 2015
Decided:  November 17, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Employee Benefit Management Services, Inc. (EBMS) and Joint Powers Trust (JPT) appeal from the order of the Montana First Judicial District Court, Lewis and Clark County, granting Kent D. Roose's (Roose) motion for class certification and declaratory judgment. We affirm.

## PROCEDURAL AND FACTUAL HISTORY

¶2 On October 3, 2007, Roose was severely injured in an automobile crash on Highway 93. The driver of the other vehicle, Stearns, whose negligence is undisputed, was killed in the accident. Stearns' liability insurance carrier tendered the limit of its liability coverage, and his estate also paid funds to Roose; however, these payments fell short of covering the more than $320,000 in medical expenses incurred by Roose for treatment at Kalispell Regional Hospital (the Hospital) after his injury.

¶3 At the time of the crash, Roose's wife was an employee of Lincoln County. The County provided health benefits via a group health plan (the Plan) that was part of JPT, a pool of local government health plans. The JPT plans were administered by EBMS, which acted primarily as a third-party administrator, and which administers other local government plans in Montana.

¶4 The Plan contained an exclusion stating that medical benefits would not be paid when any automobile or third-party liability insurance was available to pay medical costs. Appellants informed Roose, the Hospital, and Stearns' liability insurer of the exclusion.

¶5 The Hospital subsequently asserted a medical lien for $40,000. Stearns' insurer tendered its $100,000 liability limit to Roose in the form of a check made out to both

Roose and the Hospital. The Hospital refused to sign the check or release its lien until Roose agreed to pay the Hospital $40,000 of the $100,000 payment, which Roose did.

¶6 Roose contacted EBMS and objected to the fact that the $40,000 hospital charge was paid out of the liability insurance funds, rather than from the Plan. He requested reimbursement for the $40,000 he paid to the Hospital out of the liability insurance payment he received. EBMS denied his request. In a letter dated August 6, 2009, EBMS rejected all allegations of wrongdoing.

¶7 In October 2009, Roose brought suit against EBMS, JPT, and Lincoln County, though the County was later dismissed as a party, requesting declaratory and injunctive relief, and class action certification. In 2013, we published our opinion in *Diaz v. State (Diaz III)*, 2013 MT 331, 372 Mont. 393, 313 P.3d 124, wherein we held that exclusions such as the one contained in the Plan violated § 2-18-902(4), MCA, Montana's made-whole law. Following the publication of *Diaz III*, Appellants reimbursed Roose the $40,000 paid to the Hospital.

¶8 On April 4, 2014, Roose filed a motion for partial summary judgment and class certification. Roose argued that Appellants violated § 2-18-902(4), MCA, through systematic practices that amounted to seeking subrogation against Stearns' liability carrier before Roose was made whole. Roose also requested class certification on behalf of every member of Appellants' plans subject to Montana law that contained the coverage exclusion. Roose requested a declaratory judgment that both the exclusion and Appellants' systematic practices violate Montana's made-whole laws. He also sought an

3

injunction requiring Appellants to cease all illegal practices. Finally, Roose, as an individual, requested a trial seeking actual and punitive damages for bad faith.

¶9 On September 22, 2014, the District Court issued its order on the motion for summary judgment and class certification. The court found that certification was appropriate for an equitable relief class under M. R. Civ. P. 23(b)(2) and authorized a notice to be sent to potential class members to determine the viability of the class and to gauge the necessity of certifying a restitution subclass. The court granted a declaratory judgment stating that JPT, as an insurer governed by Title 2, MCA, was required to comply with Montana's made-whole laws. Thus, JPT was required to provide coverage for medical expenses regardless of the availability of third-party liability coverage. Once the insured was made whole, JPT could seek reimbursement from the liability carrier. The court ordered Appellants to remove the illegal exclusion from their plans and to cease systematic practices that violated the made-whole laws. The court also ordered Appellants to process all claims incurred in the past without the application of the illegal exclusion. The court ruled on Roose's bad faith claim in a different order and granted his motion for a jury trial on that issue.

¶10 Appellants timely appealed the District Court's order regarding class certification.

## STANDARD OF REVIEW

¶11 We review a district court's decision on a motion for class certification for an abuse of discretion. *Chipman v. Northwest Healthcare Corp.*, 2012 MT 242, ¶ 17, 366 Mont. 450, 288 P.3d 193. The abuse of discretion question is "not whether this Court would have reached the same decision, but whether the district court acted

4

arbitrarily without conscientious judgment or exceeded the bounds of reason." *Rolan v. New West Health Servs.*, 2013 MT 220, ¶ 13, 371 Mont. 228, 307 P.3d 291; *Chipman*, ¶ 17 (quoting *Newman v. Lichfield*, 2012 MT 47, ¶ 22, 364 Mont. 243, 272 P.3d 625). The district court's judgment on certification should be accorded the greatest respect because it is in the best position to consider the most fair and efficient procedure for conducting any given litigation. *Chipman*, ¶ 17. Further, "[t]rial courts have the broadest discretion when deciding whether to certify a class." *Sieglock v. Burlington Northern & Santa Fe Ry. Co.*, 2003 MT 355, ¶ 8, 319 Mont. 8, 81 P.3d 495 (citing *McDonald v. Washington*, 261 Mont. 392, 399, 862 P.2d 1150, 1154 (1993)).

**DISCUSSION**

¶12 Appellants present two issues for review:

1. *Did the District Court abuse its discretion when it certified the proposed class under Rule 23 of the Montana Rules of Civil Procedure?*

2. *If the class was properly certified, did the District Court abuse its discretion by defining the class over-broadly?*

We will address each issue in turn.

¶13 *1. Did the District Court abuse its discretion when it certified the proposed class under Rule 23 of the Montana Rules of Civil Procedure?*

¶14 A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Mattson v. Mont. Power Co. (Mattson III)*, 2012 MT 318, ¶ 18, 368 Mont. 1, 291 P.3d 1209 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557 (1979)). A class action allows the representative party to conserve the judiciary's and the similarly-situated parties'

5

resources by permitting the single litigation of common issues of fact and law. *Morrow v. Monfric, Inc.*, 2015 MT 194, ¶ 8, 380 Mont. 58, 354 P.3d 558 (citations omitted). Class actions are governed by Rule 23 of the Montana Rules of Civil Procedure. In order for a class action to proceed it must first meet the four requirements of Rule 23(a). *Morrow*, ¶ 8. However, the class action proponent need not prove each element with absolute certainty. Once Rule 23(a) is satisfied a district court must then determine whether the class action conforms to the type of class actions available pursuant to Rule 23(b). *Diaz v. Blue Cross & Blue Shield (Diaz I)*, 2011 MT 322, ¶ 27, 363 Mont. 151, 267 P.3d 756. Rule 23 provides a district court with flexible management tools to adjust the certified class as the case proceeds. In *Rolan v. New West Health Servs.*, we declined to override the district court's determination as to the breadth of the class definition where the court included insureds who had never filed claims. *Rolan*, ¶¶ 23, 26. Further, we stated:

> [C]lass action certification orders "are not frozen once made"; instead, the District Court maintains discretion to alter the class definition as the case proceeds. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___U.S. ___, 133 S. Ct. 1184, 1202 n. 9 [185 L.Ed.2d 308] (2013) ("Rule 23 empowers district courts to 'alter or amend' class-certification orders based on the circumstances developing as the case unfolds.") (citing F. R. Civ. P. 23(c)(1) and 23(c)(1)(C)); *see Howe v. Townsend*, 588 F.3d 24, 39 (1st Cir. 2009) ("Courts can amend certification orders to reflect major changes or minor adjustments to the class.") (citing F. R. Civ. P. 23(c)(1)(C)).

*Rolan*, ¶ 15.

¶15 Appellants argue Roose failed to demonstrate the class numerosity requirement under Rule 23(a)(1) and failed to demonstrate the class commonality and typicality requirements under Rule 23(a)(2)-(3). Further, Appellants argue because Roose's claims

6

are not common and typical to the class, he is an inadequate representative under Rule 23(a)(4). Each argument is addressed in turn below.

## A. Rule 23

¶16 M. R. Civ. P. 23, "Class Actions," states in part:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

The requirements listed in sections 23(a)(1)-(4) are often referred to, respectively, as Numerosity, Commonality, Typicality, and Adequacy of Representation. *Diaz I*, ¶ 27; *Sieglock*, ¶ 10; *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___,131 S. Ct. 2541, 2550 (2011). The party seeking class certification has the burden of showing that the proposed class meets all four requirements. *Morrow*, ¶ 8; *Diaz I*, ¶ 27.

¶17 Once Rule 23(a)'s requirements are satisfied, then the court must determine the type of class action that is appropriate under Rule 23(b). Rule 23(b)(2) states the party in opposition to the class must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." M. R. Civ. P. 23(b)(2). A Rule 23(b)(2) class is considered a mandatory class. Unlike a damage class under Rule 23(b)(3), wherein the class members can opt out, 23(b)(2) class members generally cannot opt out. William B. Rubenstein, *Newberg on Class Actions*, § 4:1 (5th ed. Supp. 2015). Thus,

relief awarded to a Rule 23(b)(2) class applies to all class members regardless of whether they are knowledgeable of the litigation and regardless of whether all have suffered the precise injury that was suffered by the representative party. *Newberg on Class Actions*, § 4:28.

### 1. Rule 23(a)(1)—Numerosity

¶18 While Rule 23(a)(1) is often referred to as the "Numerosity" requirement, at its heart is that joinder is impracticable. *Morrow*, ¶ 10; *Newberg on Class Actions*, § 3:11. "Numerousness—the presence of many class members—provides an obvious situation in which joinder may be impracticable, but it is not the only such situation; thus Rule 23(a)(1)'s analysis may, in *specific circumstances*, focus on other factors as well." *Newberg on Class Actions*, § 3:11 (emphasis added). The nonnumeric factors courts have looked to include judicial economy, geographic distribution of putative class members, the size of the members' individual claims, and the ability to initiate individual lawsuits, amongst others, when determining whether joinder is impracticable and certification is appropriate. *Morrow*, ¶ 12; *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009); *Newberg on Class Actions*, § 3:12. The consideration of factors such as these is within the broad discretion of the district court. *Jacobsen v. Allstate Ins. Co.*, 2013 MT 244, ¶ 25, 371 Mont. 393, 310 P.3d 452.

¶19 Appellants argue that the Rule 23(a)(1) element has not been satisfied because Roose "is in essence in a class by himself." Appellants state that, in a search of their records, Roose was the only person they found to have had his made-whole rights violated by having liability payments applied to medical coverage when submitting

8

claims to EBMS. Appellants correctly point out that Roose must meet all of Rule 23(a)'s requirements and the failure of one is fatal to certification. *Morrow*, ¶ 8. Because no other class members were discovered Appellants contend that the class certification must fail because the Numerosity requirement cannot be met.[1]

¶20 The District Court considered Appellants' argument but determined that sufficient potential class members existed to meet the Numerosity requirement. Explaining its rationale, the court stated:

> Roose, however, has provided a compelling basis for believing that most persons whose rights were infringed upon never filed claims and, therefore, would not show up in [Appellants'] computers despite the accuracy of the search. The reasons why an insured would not have filed claims include the fact that [Appellants] informed both insureds and medical providers that no coverage existed if liability insurance was available. The evidence demonstrated, for instance, that EBMS informed the hospital taking care of Roose that based on the exclusion, liability insurance had to be exhausted before health insurance would pay anything. EBMS's claims manual stated that if insureds or medical providers inquire, the customer service representatives should inform them that liability insurance has to be exhausted first. Thus, the medical providers would direct their claims to the liability insurer for payment, and [Appellants] would not process the health insurance claims. Since [Appellants'] systematic procedures created a situation where their insureds would not file claims, it would neither be realistic nor equitable to conclude that no insureds are entitled to restitution. All person[s] in [Appellants'] plans which are subject to Montana law are entitled to know that an unlawful exclusion has been taken out of their policy.

¶21 Based on the evidence presented to the District Court it determined parties other than Roose exist whose interests are directly affected by the outcome of this litigation. The District Court, in the best position to consider the evidence before it, looked to

---

[1] Review of the record indicates one other person other than Roose was actually discovered in EBMS's computer search of similarly situated individuals.

9

factors other than sheer numbers alone to determine joinder of all interested parties is impracticable at this stage in the litigation. In its evaluation of the evidence the District Court determined individuals other than Roose are certain to be found. Because the District Court was in the best position to judge it highly likely that other additional insureds, under the circumstances specific to the case, may have had their made-whole rights violated under the policy's exception, and it properly considered factors relating to Rule 23(a)(1), the District Court did not clearly abuse its discretion—based on the facts as presently developed. Further, as is related to the type of class action that was certified, which is discussed below, all insureds subject to the unlawful exclusion at issue have a right to equitable and injunctive relief and mandatorily become members of such a class. Finally, as certification orders are not set in stone, should no other affected insureds be discovered to sufficiently satisfy Rule 23(a)(1), the District Court is able to decertify the class for failure to meet all of the requirements under Rule 23(a), which is precisely what the District Court indicated it would evaluate upon motion from EBMS and JPT.

¶22 The Dissent cites *Smith v. Transworld Sys. Inc.*, 953 F.2d 1025 (6th Cir. 1992), to support the contention that mere conclusory allegations as to claims of numerosity are insufficient to establish compliance with Rule 23(a)(1). Dissent, ¶ 45. While the Dissent's proposition is essentially correct, *Smith* is readily distinguishable from the present action. In *Smith* a third party inadvertently sent the plaintiff to the defendant collection agency over the payment of a debt incurred by the plaintiff, despite that the plaintiff had previously paid the debt to the third party. *Smith*, 953 F.2d at 1026. Through a series of correspondence the defendant attempted to collect payment of the

debt from the plaintiff. *Smith*, 953 F.2d at 1026-1027. The plaintiff ultimately brought suit against the defendant alleging the violation of various state and federal consumer protection laws, and later sought class action certification based on the boilerplate language used in the defendant's correspondence. *Smith*, 953 F.2d at 1027, 1033. The defendant responded by claiming the defense of bona fide error. *Smith*, 953 F.2d at 1027.

¶23 Here, unlike *Smith*, the Appellants have conceded that the exclusion contained in the policy is illegal. In contrast, the defendant in *Smith* claimed a bona fide error occurred that excused its conduct in violation of the laws at issue. Thus in this case, and not in *Smith*, the Appellants, by their own admission, "acted or refused to act on grounds that apply generally to [a] class [.]" M. R. Civ. P. 23(b)(2). Therefore, in this case and unlike in *Smith*, evidence of numerosity is not based on mere conclusory allegations made by the defendant; instead Appellants themselves have admitted to illegal conduct that affects every single policyholder whose policy contained the illegal exclusion—policyholders who certainly exist but are impracticable to join at this stage in the litigation.

¶24 We find the District Court's reasoning reasonable and designed to facilitate a fair and efficient resolution of the matter. Accordingly, we will not reverse the court's finding that the requirement of M. R. Civ. P. 23 (a)(1) was met.

## 2. Rule 23(a)(2)-(4)—Commonality, Typicality, and Adequate Representation

¶25 Commonality under Rule 23(a)(2) means that there must be "questions of law or fact common to the class" and Typicality under Rule 23(a)(3) means the representative

11

party's claims or defenses must be "typical of the claims or defenses of the class." M. R. Civ. P. 23(a)(2)-(3). Further, Rule 23(a)(4) states the parties representing the putative class must "fairly and adequately protect the interests of the class." M. R. Civ. P. 23(a)(4).

¶26 EBMS and JPT also challenge the District Court's holding that the requirements of Rule 23(a)(2)-(4), Commonality, Typicality, and Adequacy of Representation, were met. The thrust of Appellants' argument is that Roose's individual bad faith claim conflicts with the purposes of the class and destroys Commonality and Typicality. Further, Appellants state because of his bad faith claim it puts Roose in a unique situation, thus making him an inappropriate representative for such a class.

¶27 EBMS and JPT first point out, correctly, that the District Court certified the class under M. R. Civ. P. 23 (b)(2). That rule states:

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Thus, they argue that Roose's claim seeks individualized money damages and therefore falls outside the scope of Rule 23(b)(2).

¶28 Their argument is rooted in the U.S. Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*. There, the U.S. Supreme Court held that class certification under federal Rule 23(b)(2) is inappropriate where "monetary relief is not incidental to the [requested] injunctive or declaratory relief." *Wal-Mart*, 131 S. Ct. at 2557. Therefore,

12

EBMS and JPT posit that, because the declaratory and injunctive relief ordered by the District Court could result in individual payments of benefits to class members, the class should not be certified under M. R. Civ. P. 23(b)(2).

¶29 Roose responds by pointing out that we have recognized the *Wal-Mart* limitation as applying to cases "when each class member would be entitled to an individualized award of monetary damages, or when each class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Diaz I*, ¶ 42 (emphasis in original). In the case of *Diaz*, as in this case, the declaratory and injunctive relief granted was uniform. Both courts simply declared the insurers' exclusions illegal and required the insurers to cease violating Montana's made-whole laws and restore benefits to their insureds. Roose acknowledges that the class as-certified is entitled to prospective relief only. The District Court has not certified a class for the purposes of restitution. Any monetary relief granted to individual class members as a result of these rulings would occur outside the scope of the class action and would be incidental to the declaratory and injunctive relief ordered by the district courts. *Diaz I*, ¶ 48. Applying our holding in *Diaz I* to this case, we conclude that the *Wal-Mart* limitation does not prohibit certification under M. R. Civ. P. 23(b)(2).

¶30 Regarding EBMS' and JPT's contention that Roose's individual claim for bad faith damages creates a conflict that destroys Commonality and Typicality, the District Court considered Appellants' argument and determined that nothing in the bad faith claim implicated issues in the class action. Such a finding is within the discretion of the District Court and we see no evidence that the court abused its discretion in so ruling.

13

Furthermore, because the District Court certified the class under Rule 23(b)(2) as a class seeking to enjoin the Plan's exclusion at issue and like exclusions, all class members need not have suffered Roose's precise injury. At this stage in the litigation the bad faith claim Roose advances against Appellants for the ways in which Appellants may have acted while processing Roose's insurance may exist separate and apart from the issue of whether the exclusion itself should be enjoined.

¶31 Finally, regarding Appellants' adequacy of representation claim, the District Court stated no objection as to class counsel was made by Appellants, and for the reasons set forth above we are not persuaded Roose's individual claims of bad faith make him an inappropriate representative to advance the interests of the as-certified Rule 23(b)(2) class.

¶32 We conclude that the District Court did not abuse its discretion in finding that the Rule 23(a) criteria were met and certifying the class under Rule 23(b)(2).

### 3. Rule 23(c)—Notice

¶33 The essence of the certification notice provision of Rule 23 is to protect the due process rights of all class members, specifically those who are absent. *Newberg on Class Actions*, § 1:15. For Rule 23(b)(2) mandatory classes certification notice is discretionary; whereas notice is required for Rule 23(b)(3) damage classes. M. R. Civ. P. 23(c)(2). The rationale behind discretionary certification notice in mandatory class actions is that members may not generally opt out of class participation; thus, requiring certification notice would serve little valuable function and cause the parties to sink unnecessary and

potentially unsupportable costs into the early stages of the litigation. *Newberg on Class Actions*, § 8:3.

¶34 Appellants argue notice in this case was improper. They state the District Court used the Rule 23(c) notice provision as a method to satisfy the Numerosity requirement because at present Roose is the only known class member. However, as determined by the District Court based on the evidence it reviewed and as outlined above, the Rule 23(a)(1) requirement was properly satisfied at this stage in the litigation. Rule 23 in its entirety provides management tools for a court to control litigation in the best and most efficient manner possible. *Jacobsen*, ¶ 25; *Chipman*, ¶ 17. Here, as permitted under the Rule, the District Court used its discretion to determine—under the facts as presently developed—notice to absent class members is appropriate.

¶35 Appellants argue, and the Dissent agrees, that class relief was not appropriate because Appellants were already in the process of correcting the policies to remove the illegal exclusion. Dissent, ¶¶ 51-52. In fact, it is the acknowledged unlawful conduct itself that makes potential relief appropriate in this case. Class certification should not be denied when to do so would prevent policyholders—Rule 23(b)(2) mandatory class members—from learning of the illegal exclusion, its removal, and its effect on their made-whole rights. The District Court properly acknowledged that, despite Appellants' removal of the illegal exclusion, all policyholders are entitled to notice of its removal. Therefore, under Rule 23(b)(2), "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" M. R. Civ. P. 23 (b)(2). The court

15

recognized its obligation to administer additional proper relief, should relief be appropriate in this case.

¶36 The District Court did not merely seek to use the notice provision to discover more class members. Instead, the District Court determined that the case and evidence at present show more class members do exist and are certain to be found. Accordingly, we will not disturb the District Court's decision to use the notice provision as a tool to manage the litigation process.

¶37 *2. If the class was properly certified, did the District Court abuse its discretion by defining the class over-broadly?*

¶38 EBMS and JPT argue that the District Court abused its discretion by defining the class too broadly. According to EBMS and JPT, the class definition could create liability for non-parties to the lawsuit and would include claimants who are members of plans that no longer do business with EBMS and JPT and, therefore, would never receive payments.

¶39 In its order granting class certification, the District Court defined the class as follows:

1) All persons insured through EBMS-administered plans (including JPT plans) dating back eight years before Mr. Roose filed the suit (i.e., statute of limitations for contracts);
2) who, similar to Mr. Roose, have been enrolled in plans containing exclusions which require payment of medical bills by liability carriers before the EBMS plan is required to pay or result in reimbursement of the plan when both the plan and the liability carrier have paid;
3) who, similar to Mr. Roose, are subject to various systematic practices which implement the subject exclusions; and
4) excluding plans not subject to Montana law.

¶40 We do not see evidence of the dire consequences predicted by Appellants based on this definition. The definition appropriately narrows the class to individuals enrolled in

16

plans administered by Appellant EBMS that contained the unlawful exclusion. Roose has stipulated that the District Court cannot order EBMS to provide restitution to non-JPT plan members. Because the declaratory judgment was issued against JPT, and the court granted only prospective injunctive relief, the class is limited to plans that are still part of JPT. Furthermore, the District Court considered Appellants' argument and stated:

> "The Court is also appreciative of [EBMS' and JPT's] concern that granting the Plaintiff's request will unfairly involve plan owners, such as Lincoln County, with whom the Plaintiff has no connection. While this is true, the Court has no intention of affecting the rights of defendants not in this case. However, EBMS and JPT are Defendants in this case. This Court can make decisions concerning their conduct and this Order intends to do nothing more than that."

¶41 Nothing in the record demonstrates that the District Court abused its discretion by defining the class as it did.

## CONCLUSION

¶42 We conclude that the District Court did not abuse its discretion by certifying the class or by defining the class over-broadly. Accordingly, the judgment of the District Court is affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

17

Justice Laurie McKinnon, dissenting.

¶43     The Court confuses notice provisions of Fed. R. Civ. P. 23(c), the purpose of a 23(b)(2) class, and has misapplied the prerequisites for establishing numerosity.  In my opinion, we should not conflate the requirements of Rule 23 to facilitate discovery for a plaintiff at the expense of procedural fairness to a defendant.  While a district court is given wide discretion in certification of class actions; here, specific provisions of Rule 23 have been conflated and result in a distortion of the Rule's purpose and procedural fairness.

¶44     Montana and federal rules on class actions are the same and we have recognized the body of case law interpreting Fed. R. Civ. P. 23 as instructive.  *Chipman*, ¶ 43.  Consistent with federal jurisprudence, Montana establishes that the plaintiff bears the burden of showing that each of the elements of Rule 23(a) are met before proceeding to identify which type of class action may be maintained pursuant to 23(b).  *Morrow*, ¶ 8; *Diaz I*, ¶ 27.  Rule 23(c)(2) specifically provides that "[f]or any class certified under [23 (b)]," the court either "may" or "must" provide notice, thus establishing that the prerequisites of 23(a) are to be satisfied before maintaining a class action under (b)(2) or (b)(3).  Accordingly, before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).  "[T]here must not only be allegations relative to the matters mentioned in Rule 23. . . but, in addition, there must be a statement of basic facts.  Mere repetition of the language of the Rule is inadequate."  *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969).  While

the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23. *Doninger v. Pacific Northwest Bell, Inc*., 564 F.2d 1304, 1309 (9th Cir. 1977). The failure to satisfy any one of the prerequisites is fatal to class certification. *Morrow*, ¶ 8; *Diaz I*, ¶ 27.

¶45 The Rule "does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551. Rather a party must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by *Rule 23(a)*." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551) (emphasis in original). This Court, in *Mattson v. Mont. Power Co. (Mattson II)*, 2009 MT 286, ¶ 67, 352 Mont. 212, 215 P.3d 675, articulated the following approach, utilized by the federal courts, for addressing Rule 23 motions:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

In *Mattson II*, we specifically rejected the trial court's reliance on plaintiff's allegations, which were not supported by facts, and held that the "District Court erred in concluding it was 'required to take the Plaintiffs' allegations in support of the class action as true.'" *Mattson II*, ¶ 67. Thus, "[m]ere speculation as to satisfaction of the numerosity requirement is not sufficient. Rather, plaintiffs must present some evidence of, or reasonably estimate, the number of class members." *Polich v. Burlington N., Inc.*, 116 F.R.D. 258, 261 (D. Mont. 1987). In *Smith v. Transworld Systems*, the plaintiff offered little more than conclusory allegations, as here, to support his claim of numerosity. The Sixth Circuit concluded:

> Plaintiff's allegations that the requirements of Rule 23(a) are satisfied are founded on the assertion that defendant's forms are computer generated. According to plaintiff, this leads to the inference that: (1) "hundreds, if not thousands" of consumers are recipients of these forms, thus satisfying the numerosity requirement; (2) that the forms sent to the purported members of the class are all of the same "boilerplate" language, thus satisfying the requirement that there be common questions of law and fact among the class; (3) that since the purported class members must have received the same types of correspondence from the defendant and under the same circumstances as he did, his claims and defenses are typical of those of the class; and (4) "plaintiff will fairly and adequately protect the interests of the class, and he has retained competent counsel to represent the class."

*Smith*, 935 F.2d at 1033. The court found that sufficient facts had not been alleged to permit a reasonable inference that the mandatory prerequisites of Fed. R. Civ. P. 23(a) had been met. *See also, Edwards v. McCormick*, 196 F.R.D. 487, 494 (S.D. Ohio 2000).

¶46 The Court's attempt to distinguish *Smith* on the basis that Transworld had a bona fide defense, which this Court asserts Appellants do not have, is not only incorrect, but

misleading. In *Smith*, the court's resolution of the bona fide defense issue was pursuant to Transworld's motion for partial summary judgment and simply had nothing to do with the court's analysis of Rule 23 criteria. In response to Smith's objection that the trial court had improperly reviewed the substantive merits of his class action claim by addressing the bona fide defense claim of appellees, the Sixth Circuit Court of Appeals stated:

> The appellant misconstrues the District Court's rationale, however. The district court did not analyze the substantive merits of Smith's class action claim; rather, the district court denied Smith leave to amend his complaint because Smith failed to allege facts "from which the Court could at least reasonably infer that the mandatory prerequisites of Rule 23(a) have been met."

*Smith*, 953 P.2d at 1032.

¶47 Here, the Court is doing precisely what the *Smith* court said it was not doing and it is misleading, to say the least, to construe *Smith* as support for the Court's rationale. Furthermore, in my opinion, it is inappropriate for this Court to misconstrue the position and defenses of the parties by addressing the substantive merits of Roose's class claim. We state "[h]ere, unlike *Smith*, the Appellants have conceded the exclusion contained in the policy is illegal." Opinion, ¶ 23. However, what Appellants concede is that they changed their coordination of benefits provision in response to this Court's decision in *Diaz II*. Appellants' claim that Roose's money was withheld under a medical lien filed by Kalispell Regional Medical Center pursuant to § 71-3-114, MCA. Therefore, it is hard to construe how they have conceded anything on the substantive merits of Roose's

21

class claim. Appellants' claim pertaining to § 71-3-114, MCA, has never been addressed by the Court.

¶48 The fundamental inquiry regarding numerosity is whether "the class is so numerous that joinder of all members is impracticable." M. R. Civ. P. 23(a). While the court must determine numerosity on a case-by-case basis, at a minimum there must be some fact upon which the trial court may conclude that there are at least other members of the class *and* that their joinder is impracticable. The inquiry, as set forth by Rule 23(a) necessarily implies consideration of circumstances and characteristics of class member*s* in the context of whether joinder is impracticable. Here, litigation and discovery has been on-going for five years and Roose has yet to produce any evidence or fact indicating a person, other than himself, has been impacted by the application of the exclusion. In contrast, Sherri Houser and Terri Hogan, JPT and EBMS representatives, furnished affidavits indicating Roose was the only individual who had his claims treated in a manner where the hospital had applied a portion of the liability coverage to its charges. Roose specifically had money withheld under the Lincoln County Employee Group Health Plan (LC Plan) because of a medical lien filed by Kalispell Regional Medical Center pursuant to § 71-3-114, MCA. The situation is thus different from when there is no lien and the payment was withheld entirely as a result of a third party liability payment, as in *Diaz v. State (Diaz II)*, 2013 MT 219, 371 Mont. 214, 308 P.3d 38. It was incumbent upon Roose, in carrying out his burden of establishing numerosity, to produce some evidence that other members of the defined class existed. Roose has supplied no more than conclusory allegations, while JPT and EBMS have supplied the court with

22

specific and articulable facts. The only evidence before the District Court was that no member, other than Roose, had his liability coverage reduced by a hospital lien.[1]

¶49 Roose has included in his class definition, adopted by the District Court, health plans other than the LC Plan and clients other than JPT. These entities are non-parties to the suit and, although the District Court has acknowledged that it could not order these non-parties to pay, there exists no basis for including them in the class definition. The District Court's assertion that we have approved this type of remedy in *Diaz II* and *Ferguson v. Safeco Ins. Co. of Am.*, 2008 MT 109, 342 Mont. 380, 180 P.3d 1164, is misplaced. In both *Diaz II* and *Ferguson*, the defendants who ultimately paid were named defendants. In *Rolan*, where we allowed certification of a class of insureds of New West who may have had claims adjusted in violation of a "made-whole" determination by New West, New West was nevertheless a named party.[2] We have

---

[1] *See also Doninger*, 564 F.2d at 1309, where the Court affirmed the trial court's denial of a class certification finding:

> [O]nly two affidavits were submitted by the appellants, and both were of their trial counsel. The contents of those affidavits added little, if any, factual support to the class action allegations. Counsel for the appellants forthrightly and frankly admitted that neither he nor any of his clients "could . . . submit affidavits based upon personal knowledge, outlining specific facts to support the allegations made with regard to the elements necessary for a class." The memoranda of authority in support of appellants' motions are likewise lacking in articulable facts, offering only vague and conclusory statements with little specific content. In sum, the trial court had before it only the most meager support for appellants' class action allegations. On the other hand, PNB had come forward with substantial uncontroverted information tending to show the inappropriateness of class treatment.

[2] In *Rolan*, this Court did not consider a claim that numerosity had not been established, but rather we considered "defendant New West's contention that the District Court's choice of class definition constituted an abuse of discretion on the grounds that the current definition (1) is imprecise, (2) improperly diverges from the definition adopted by Judge Sherlock following remand in *Diaz I*, and (3) will necessitate de-certification of the class." *Rolan*, ¶ 16. Failure to

23

previously recognized that "no authority [exists] that would permit an unknown number of class members to blindly sue an unknown number of defendants, creating in effect a 'class of defendants.'" *Chipman*, ¶ 38, citing *Murer v. Montana State Comp. Ins. Fund*, 257 Mont. 434, 437, 849 P.2d 1036 (1993). The question of whether litigation may proceed against a class of defendants has been raised in numerous federal courts and rejected. *See Brown v. Kelly*, 609 F.3d 467, 477 n.8 (2nd Cir. 2010).[3]

¶50 The Court has conflated the notice requirements for a 23(b)(2) class and a 23(b)(3) class. Unlike a 23(b)(3) class, membership in a 23(b)(2) class is automatic and mandatory. *Wal-Mart*, 131 S. Ct. at 2558. Because the purpose and remedy of the two types of classes are fundamentally different, the Rule sets out different provisions for notice. In a 23(b)(2) class, absent class members are not required to receive notice and have no opportunity to opt-out of the lawsuit. Notice is therefore not required in a 23(b)(2) class action and will only be needed to protect due process concerns when special circumstances exist. *See Newberg on Class Actions* § 8:3. The purpose of providing notice in a 23(b)(2) class "really serves only to allow those members the opportunity to decide if they want to intervene or to monitor the representation of their rights." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1786, 497-98 (3d ed. 2005); Manual for Complex Litigation

---

set forth sufficient facts as a prerequisite to class certification which demonstrate numerosity was not at issue in *Rolan*, as it is here. Nothing in *Rolan* stands for the proposition that the plaintiff does not have to meet his or her burden as to the prerequisites set forth in 23(a).

[3] "Generally, plaintiffs cannot bring a class action against defendants with whom they have had no dealings." *Chipman*, ¶ 38.

(Fourth) § 21:311, 287 (2004) (stating that notice for a 23(b)(2) class "serves limited but important interests, such as monitoring the conduct of the action").

¶51 Here, the District Court granted injunctive and declaratory relief and then ordered notice after its decision. However, notice serves no due process purpose if given after a substantive decision has been made by the court. Parties have no opportunity to intervene or monitor litigation unless notice is provided before the court makes substantive decisions. In 23(b)(2) class actions, because there is no opportunity to opt-out, a class member must be given the opportunity to intervene before substantive decisions are made in order to be afforded due process. Ostensibly, the District Court's notice was to establish a prospective class of persons who may have monetary or restitution claims, which is inappropriate for a 23(b)(2) class for injunctive and declaratory relief. The District Court's order provided that notice was to be given to insureds of both named and unnamed parties. On the record that existed at the time the certification order was made, the notice ordered by the court conflates the purpose of a 23(b)(2) class and a 23(b)(3) class—neither of which are appropriate classes given the circumstances of this proceeding—and misconstrues the notice provisions of 23(c)(2).

¶52 The injunctive and declaratory relief which may be appropriate for a 23(b)(2) class cannot be used to retroactively satisfy numerosity, a "prerequisite" for establishing a class. By allowing injunctive and declaratory relief pursuant to 23(b)(2) to serve as a subterfuge for finding class members for a monetary damages or restitution class, the Court has changed the procedural protections of Rule 23. To underscore that these proceedings are primarily an individual claim for monetary damages by Roose, it is

significant that the LC Plan and other JPT plans have changed their policies on the coordination of benefits and corresponding claims practices following our 2011 *Diaz I* decision. Rule 23(b)(2) injunctive and declaratory relief was not necessary to change the coordination of benefits provision given a change in the law, together with compliance by JPT and EBMS. Roose's claim is fundamentally a claim for individual monetary and punitive damages, and is not merely incidental to injunctive relief. Roose has requested a separate trial for damages. His individual monetary claim should be prohibited under a 23(b)(2) class. *See Jacobsen*, ¶ 76; *Wal-Mart*, 131 S. Ct. at 2557.

¶53    The Court's declaration that "it is the acknowledged unlawful conduct itself that makes potential relief appropriate in this case," Opinion, ¶ 35, adds nothing to an analysis of whether class certification is appropriate. The Court fails to appreciate that the class certified by the District Court was a Rule 23(b)(2) class, meaning that individual claims for monetary damages may not predominate, and continues to blur the distinction between the types of classes which may be certified. A Rule 23(b)(2) class is entirely different from a Rule 23(b)(3) class. "That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy *Rule 23(b)(2)* if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012) (emphasis added). When, as here, the "relief sought would simply serve as a foundation for a damages award, or when the requested injunctive or declaratory relief merely attempts to reframe a

26

damages claim, the class may not be certified pursuant to Rule 23(b)(2)." *Jacobsen*, ¶ 98 (citation and ellipses omitted).

¶54    In my opinion, this Court allows Rule 23's notice provision to serve as a discovery tool which inappropriately will be used to satisfy the numerosity requirement retroactively or to establish a monetary damages class prospectively.  This approach changes the requirements of Rule 23 and creates issues of fairness and due process. While a trial court is afforded wide discretion in certifying a class action, the requirements and structural protections of Rule 23 must nevertheless be observed.  This action is a named a 23(b)(2) class action with 23(c)(2)(A) notice, but may be more aptly described as a discovery dispute attempting to utilize the court's Rule 23 management tools and authority.  The United State Supreme Court has held that Rule 23 "sets the requirements [the courts] are bound to enforce." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997).  Courts are not at liberty to read the requirements out of the rules.  *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 597 (3rd Cir. 2012).

¶55    The Court is simply wrong when we state that the "evidence at present show[s] more class members do exist and are certain to be found," Opinion, ¶ 36, when no evidence at all has been presented that there is another member of the class besides Roose.  Indeed, the Court's statement is a contradiction in itself by claiming that there is evidence and then acknowledging that other members are "certain" to be found.  Opinion, ¶ 36.  Roose failed to provide sufficient evidence of numerosity which is fatal to his class action.  It is therefore not necessary to address whether he has established commonality,

27

typically, and that he is an adequate representative for the class. Certification of a class, for the reasons stated above, was contrary to the requirements of Rule 23 and was an abuse of discretion.

/S/ LAURIE McKINNON